Susan WENZEL (C5–83–1420),

Lerowy Laskow (C9–83–1419),
Appellants,

v.

MEEKER COUNTY WELFARE BOARD
and Minnesota Department of Public
Welfare, Respondents.

Nos. C5–83–1420, C9–83–1419.

Court of Appeals of Minnesota.

April 10, 1984.

Bonnie L. Kleman, Willmar, for appellants.

Henry Wieland, Meeker County Atty., Litchfield, for respondent Meeker County Welfare Bd.

Vicki Sleeper, St. Paul, for respondent Minnesota Dept. of Public Welfare.

## OPINION

FOLEY, Judge.

This case involves a consolidated appeal of a denial of Emergency Assistance to individuals faced with utility shut offs for non-payment of utility bills. The Meeker County Welfare Board denied appellants benefits because the shut offs were "foreseeable crises" rather than "unanticipated emergencies." The Commissioner of Pub-

lic Welfare and the district court upheld the denials. We reverse.

## ISSUE

Is the definition of "emergency" contained in the Department of Public Welfare's Aid to Families With Dependent Children (AFDC) manual an interpretive rule not properly promulgated under the Minnesota Administrative Procedures Act?

## FACTS

In June 1982, Susan Wenzel and Leroy Laskow each applied to the Meeker County Welfare Board for emergency assistance to help pay utility bills. Both faced shut offs for long-term non-payment of utility bills.

Wenzel is a divorced mother of two. She has not worked outside the home since May 1981 when she quit work to undergo treatment for alcoholism. Her only income comes from AFDC payments and food stamps. Her monthly living expenses regularly exceed her income. In May 1982, NSP notified Wenzel that if she did not pay an overdue bill in full, her service would be disconnected. She was unable to pay the bill because she had spent her May AFDC check on living expenses and property taxes.

Laskow is an unemployed assembler. He has a wife and two children. When he applied for emergency assistance his wife was pregnant with their second child. The Laskows' only income comes from AFDC payments and food stamps. Their living expenses often exceed their income. Laskow applied for emergency assistance to prevent a shut off of natural gas.

The Welfare Board denied both Wenzel's and Laskow's applications. It found no emergency in either case since the shut offs were prompted by non-payment, and therefore were not "unanticipated emergencies." Wenzel and Laskow appealed. The Commissioner of the Department of Public Welfare affirmed both denials. He found the AFDC manual definitions of "emergency" and "crisis" are consistent with federal regulations and state statutes.

He found no emergency in either case because the utility shut offs were the foreseeable result of non-payment of utility bills. The district court sustained the commissioner.

## ANALYSIS

### Emergency Assistance Program

■ The Emergency Assistance Program is a joint federal/state program to provide immediate, short-term help to AFDC recipients and other needy families faced with emergency expenses they cannot meet with their own resources. The federal government reimburses states for 50 percent of their costs in administering the program. The state pays 5 percent and the counties 45 percent of the remaining cost. State participation is optional. *Quern v. Mandley,* 436 U.S. 725, 98 S.Ct. 2068, 56 L.Ed.2d 658 (1978).

### Federal Eligibility Criteria

Federal eligibility requirements for emergency assistance are found at 42 U.S.C. §§ 603(a)(5) (1983) and 606(e) and 45 C.F.R. § 233.10 (1983). They make emergency assistance available for one 30-day period each 12 months to needy families, regardless of whether they are AFDC recipients. The federal government will reimburse states for assistance provided to needy families with children whenever:

1. such child is without available resources, and
2. the payments, care, or services are necessary to avoid destitution of such child or to provide living arrangements in a home for such child, and
3. such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment or training for employment.

42 U.S.C. Sec. 606(e).

Thus under the [federal] emergency assistance statute, federal matching funds are available for emergency aid to intact families with children if threatened with destitution, *regardless of the cause of their need.*

*Quern,* 436 U.S. at 729, 98 S.Ct. at 2071 (emphasis added).

■ However, states need not adopt such broad eligibility standards. *Quern* held that 42 U.S.C. § 606(e) defines the *permissible* scope of an emergency assistance program, not *mandatory* eligibility standards for states participating in the program. *Quern,* 436 U.S. at 747, 98 S.Ct. at 2080. States may not exclude groups intended by Congress to benefit from the program. *Blum v. Bacon,* 457 U.S. 132, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982) (state may not exclude AFDC recipients from Emergency Assistance Program). They may, however, restrict the situations in which assistance is available to all applicants.

Several states have enacted emergency assistance statutes expressly limiting aid to unforseeable and unavoidable crises. For example, New York limits eligibility as follows:

Subd. 2. For purposes of this section, the term "emergency assistance" means aid, care and services * * * to meet the emergency needs of a child or the household in which he is living, in the following circumstances:

(e) such occurrence or situation could not have been forseen by the applicant, was not under his control * * *

N.Y.Soc.Serv.Law § 350–j (1978).

### Minnesota Eligibility Criteria

The question before us is whether Minnesota has chosen to similarly limit emergency assistance. The state statute and regulations governing emergency assistance parallel the broad eligibility language of the federal statute.

Minn.Stat. § 256.871 (1982) provides:

Subd. 2. Eligibility for emergency assistance. Notwithstanding any other eligibility provision of this chapter, any child without resources immediately available to meet emergency needs shall be furnished assistance for a period not

in excess of 30 days during any 12-month period. Assistance shall be furnished under the following conditions:

(a) The child is without resources immediately available to meet emergency needs.

(b) Assistance is necessary to avoid destitution or provide emergency shelter arrangements.

(c) The child's destitution or need for living arrangements did not arise because he or the relative refused without good cause to accept employment or training for employment.

Subd. 4. Emergency defined. Emergencies which create the need for such assistance include natural disasters such as floods, fires, or storms; civil disorders, strikes, illness, accident, death, evictions from shelter, migrant families in necessitous circumstances, or other crises, as defined by the commissioner, in accordance with directives of the United States secretary of health, education and welfare.

12 M.C.A.R. 2.044(H)(2) (1982) provides:

a. Eligibility qualifications

(1) Emergency Assistance is immediate financial aid for AFDC families and other families in situations that place a child and any other member(s) of the family in jeopardy and cannot be resolved with the family's current resources. Examples of emergencies are natural and civil disorders, illness, accident, death, threat of eviction, etc. * *

b. Allowable need items

(1) Emergency Assistance shall cover payment for food, shelter, clothing, fuel and utilities, medical care and child care.

Only the Department of Public Welfare's AFDC manual expressly limits eligible emergencies to "sudden, unexpected occurrences." The AFDC manual distinguishes between emergencies and crises and authorizes emergency assistance only where both are present. The manual provides:

The intent of the Emergency Asistance Program is to deal with emergencies—crisis situations threatening families—that if not resolved will result in severe hardship to the child(ren) * * *.

*Definition—Emergency*

A sudden, generally unexpected occurrence or set of circumstances demanding immediate action

Examples of emergencies include, but are not limited to: natural disasters such as floods, fires, or storms, civil disorders, strikes, illness, accidents, or death

*Definition—Crisis*

A crucial time in a given situation, the outcome of which decides whether possible undesirable consequences will follow·

■■ The AFDC manual is an interpretive tool authorized by 12 M.C.A.R. Sec. 2.044(A)(1) (1982). Its contents may be valid as a restatement of existing law. *Wacha v. Kandiyohi County Welfare Board,* 242 N.W.2d 837 (Minn.1976) However, the manual lacks the legal authority of an interpretive rule since it was not promulgated according to the Minnesota Administrative Procedures Act. Interpretive rules are covered by the act and are legally valid only if adopted pursuant to its rulemaking procedures. *Johnson Bros. Wholesale Liquor Co. v. Novak,* 295 N.W.2d 238, 242–243 (Minn.1980); *McKee v. Likins,* 261 N.W.2d 566, 577–578 (Minn.1977).

The Department of Public Welfare urges this court to find that the AFDC manual definition of emergency is merely a restatement of the statutory definition. The department argues that the requirements of suddenness and unexpectedness are implicit in the term emergency, and that such limitations are necessary to wisely allocate limited emergency assistance funds.

■■ As a general rule courts defer to an agency's interpretation when the language subject to construction is so technical in nature that only a specialized agency has the experience and expertise needed to understand it, *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (1977), when the language is ambiguous or when the agency interpretation is one of long standing. *In Re Abbott's Estate v. Dancer,* 213 Minn.

289, 6 N.W.2d 466 (1942). But courts need not defer when the language employed or the standard delineated is clear and capable of understanding. *Resident v. Noot,* 305 N.W.2d 311, 312 (Minn.1981).

We decline to defer to the department's interpretation because:

1. Minn.Stat. § 256.871 uses virtually the same broad eligibility language as the federal emergency assistance statute. Had the legislature intended to limit emergency assistance to sudden and unavoidable crises it could have used language similar to that in the New York statute.

2. The list of examples in the statute includes emergencies which families may be able to foresee or avoid, i.e. strikes, eviction from shelter and migrant families in necessitous circumstances.

3. The department conceded at oral arguments that the AFDC manual definition of emergency has not been consistently applied in the past. The limitations are the result of federal funding cuts.

We understand and sympathize with the problems created by federal cut backs. These cut backs may force a reevaluation of state emergency assistance eligibility criteria. To make better use of a dwindling supply of funds for needy children, the state may wish to adopt the standards urged here by the department. However, the department is not authorized to adopt far-reaching interpretive rules without allowing public input and debate through the procedures provided in the Administrative Procedures Act.

The trial court and the commissioner erred by relying upon an invalid interpretive rule in rejecting appellants' emergency assistance applications. Minn.Stat. § 256.-871 is intended to help *children* faced with destitution. Both Wenzels and Laskows lack resources to pay for essential utility services. Without utilities the *children* face destitution. That destitution does not arise because the parents refused employment or employment training without good cause. Therefore, the Wenzel and Laskow *children* qualify under the statute.

## DECISION

We reverse and remand for award of emergency assistance benefits to both appellants.