**David BYE, et al., Relators,**

v.

**SPECIAL INTERMEDIATE SCHOOL DISTRICT NO. 916, Respondent.**

No. C2–85–1363.

Court of Appeals of Minnesota.

Jan. 7, 1986.

Review Denied Mar. 14, 1986.

William F. Garber, Peterson, Engberg & Peterson, Minneapolis, for relators.

Patricia A. Maloney, Knutson, Flynn & Hetland, St. Paul, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Sixteen teachers appeal the decision of Special Intermediate School District No. 916 to place them on unrequested leave of

absence because of financial limitations, decreasing enrollment, and discontinued positions. *See* Minn.Stat. § 125.12, subd. 6a (1984). They contend the school district violated seniority provisions in the collective bargaining agreement; wrongly relied on decreasing enrollment to justify the placement of certain teachers on unrequested leave, and wrongly relied on financial limitations to justify the unrequested leaves for all the appealing teachers; and failed to meet its burden of proof to justify unrequested leaves on the basis of discontinued positions. We affirm in part and reverse in part.

## FACTS

Special Intermediate School District No. 916 provides secondary and post-secondary vocational education, adult vocational extension services, and special education in White Bear Lake, Minnesota. The teachers involved in this appeal taught in the post-secondary vocational division (AVTI), which includes approximately 60 programs and serves approximately 1,700 students daily. The State Board of Vocational Technical Education governs AVTIs.

The district does not have any independent taxing authority, and the primary source of revenue for its AVTI is State aid. About 20 percent of revenue comes from tuition, which is set by the legislature. The primary account for paying AVTI staff compensation is Fund 11. The projected balance for Fund 11 at the close of 1985 is minus $325,827. Operations have been sustained by internal borrowing. The district has projected that if it maintains 1985 expenditure levels for the 1986 fiscal year, Fund 11 would have a deficit of $1,157,911 or 13.7 percent. The State Board has a new policy of not permitting other funds in the district to carry the AVTI and of limiting the AVTI's debt in any fund to not greater than 2.5 percent of the previous fiscal year fund reserve.

In light of the deficit and the new State Board policies, the district adopted a goal of balancing the budget and of rebuilding the fund balance. The AVTI administra-

tion was directed to cut $1,403,937 from Fund 11's 1986 budget with approximately $700,000 of the reduction to come from the budget for instructional staff. With these cuts, the projected balance at the end of 1986 is $246,028.

To determine which programs with declining enrollment would be cut, the district adopted goals of not eliminating any programs and maintaining minimum student-staff ratios set by the State Board. The student-staff ratio for health-related programs is 10 to 1, and the ratio for non-health-related programs is 14 to 1. The District has its own guideline of maintaining a 17-to-1 student-staff ratio. The district decided that programs below the minimum student-staff ratios and those on the borderline could be cut.

To determine which programs with adequate enrollment would be cut, the district adopted goals of not eliminating any program, maintaining student enrollments, and reducing the 1985 budget. The district decided that related services and instruction should be reduced before programs and that multiple-instructor programs should be reduced before single-instructor programs.

On March 19, 1985, the school district proposed to discontinue 34 positions effective June 30, 1985. The district anticipated that some teachers would be reinstated in part-time positions. A notice was sent to each of the affected teachers stating the grounds for placement on unrequested leave of absence. Upon the request of 21 teachers, hearings were held by an independent hearing examiner on April 23, 24 and 29, 1985.

The hearing examiner concluded that the fund from which salaries are paid has been in either a marginal or deficit position since 1983 and that the financial limitation currently confronting the district was the overriding reason for its decision to place the teachers on unrequested leave. She also concluded that a lack of pupils in nine programs justified a reduction in staff. She further concluded that there was no evidence that the district's decision was

either arbitrary, capricious or unreasonable. She considered each teacher's position and in each case concluded that there was no evidence that a junior teacher would be retained to teach in a position for which a senior teacher is licensed. She recommended that the affected teachers be placed on unrequested leave of absence at the close of the 1984–85 school year.

The school district adopted the hearing examiner's proposed findings and memorandum and placed the teachers on unrequested leave. Several teachers were reinstated before the appeal. Sixteen teachers now appeal by writ of certiorari.

### ISSUES

1. Was the school district's decision to place the 16 teachers on unrequested leave because of financial limitations supported by substantial evidence on the record?

2. Were the district's decisions with regard to individual teachers supported by substantial evidence or arbitrary?

3. Did the district violate the seniority provisions of the collective bargaining agreement?

### ANALYSIS

#### I

■ Our scope of review is limited. We will not set aside the district's decision unless it is arbitrary or unreasonable, not supported by substantial evidence on the record, not within its jurisdiction, or based upon an erroneous theory of law. *State ex rel. Dreyer v. Board of Education*, 344 N.W.2d 411, 413 (Minn.1984) (citing *Ganyo v. Independent School District No. 832*, 311 N.W.2d 497, 500 (Minn.1981)).

■ The teachers contend that the district cannot justify all the unrequested leaves based on financial limitations. Specifically, they argue that the district actually used lack of enrollment as the ground for placing some teachers on unrequested leave, and it used *both* lack of enrollment and financial limitations for placing others on unrequested leave. The teachers base their argument upon a March 10, 1985, school district memorandum outlining a revised plan to reduce staff and specifically placing proposed positions to be cut in certain categories. However, the evidence indicates that the plan was developed because of the overall budget problems. Substantial evidence supports the district's decision to place all the teachers in question on unrequested leave because of financial limitations.

#### II

■ The teacher tenure act allows school boards flexibility in dealing with problems such as financial limitations. *See Laird v. Independent School District No. 317*, 346 N.W.2d 153, 155 (Minn.1984). However, it was also designed to prevent arbitrary teacher demotions and discharges unrelated to ability. *Id.* The district appropriately adopted goals and specific criteria to determine which positions should be discontinued. These "articulable standards" are necessary for "even handed application of law, rather than impermissible whim, improper influence, or misplaced zeal." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977) (quoting *Greater Boston Television Corp. v. F.C.C.*, 444 F.2d 841, 852 (1970)), *cert. denied* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971). The teachers do not contend that the goals and criteria adopted by the district are unreasonable.

■ Our review of the decision to place particular teachers on unrequested leave is limited to a determination of whether there is substantial evidence supporting the decision in the record and whether the decision is arbitrary, capricious or unreasonable. In making the latter determination, the criteria set forth by the district will be the measure. *See In the Matter of the Application of Northwestern Bell Telephone Company*, 374 N.W.2d 758 (Minn.Ct.App. 1985). We apply that criteria to each of the teaching positions.

Mary Smaagaard was teaching a data processing-related course when she was placed on unrequested leave because of

financial limitations. A licensed computer operator, a licensed computer programmer, and two people licensed in a computer-related area were also placed on unrequested leave because of financial limitations. Assuming that each teacher would be partially reinstated, the total proposed cut in the area equalled a full-time, 12-month position.

After Smaagaard had been proposed for placement on unrequested leave, a senior full-time teacher assigned in the computer area resigned. Two of the teachers in the computer area were reinstated. Smaagaard was partially reinstated. She formerly held a full-time, 12-month position, and now she holds a .75, 12-month position.

Counsel for the teachers specifically stated that Smaagaard should not be reinstated because of seniority. Rather, he argued, she should be reinstated full time because the reason given for her proposed leave was budgetary, and with the unexpected resignation, the budgetary limitation no longer existed.

■ The teachers misapprehend the nature of the financial limitation criteria which may be used to place teachers on unrequested leave. The district demonstrated that because of financial limitations, it needed to place 34 teachers on unrequested leave. Once it made that determination, it did not need to prove a financial limitation specific to each position. On the other hand, it could not arbitrarily pick which teachers to place on unrequested leave. To avoid arbitrary placements, it developed articulable standards in the form of goals and criteria, which the teachers did not challenge. The district's placement of Smaagaard on unrequested leave was consistent with the goals and criteria for determining which programs with adequate enrollment were to be cut. The district did not act arbitrarily when it placed her on unrequested leave.

Three teachers are employed to teach accounting. The actual student-teacher ratio for 1983–84 was 16.47 to 1; the projected ratio for 1984–85 is 12.14 to 1 and for 1985–86 is 13 to 1. While Ronald Dodd testified that he knew of additional stu-

dents who would be entering between May and September, there is substantial evidence to support the conclusion that at present accounting is one of the courses below the minimum 14-to-1 ratio for non-health-related programs and that a position should be discontinued. Ronald Dodd is the least senior teacher under the terms of the collective bargaining agreement.

■ The Board discontinued the only position in horticulture. The student-teacher ratio for 1983–84 was 18.48 to 1; the projected ratio for 1984–85 is 11.96 to 1 and for 1985–86 is 11.21 to 1. Substantial evidence supports the conclusion that it is one of the courses below the minimum 14-to-1 ratio and that a position should be discontinued. Leslie Dorendorf is the only teacher licensed to teach horticulture.

■ Several teachers are employed to teach machine technology. The actual student-teacher ratio for 1983–84 was 17.75 to 1; the projected ratio for 1984–85 is 14 to 1 and for 1985–86 is 15.73 to 1. Substantial evidence supports the conclusion that it is one of the borderline courses and that a position should be discontinued. William Hargrove is the least senior teacher.

■ Several teachers are employed to teach marine and power. The actual student-teacher ratio for 1983–84 was 17.77 to 1; the projected ratio for 1984–85 is 10.72 to 1 and for 1985–86 is 10.88 to 1. Substantial evidence supports the conclusion that it is one of the courses below the minimum 14-to-1 ratio and that a position should be discontinued. Thomas Scholberg is the least senior teacher licensed to teach the course.

The school district discontinued the only position in the vending machine technician course. The actual student-teacher ratio for 1983–84 was 15.4 to 1; the projected ratio for 1984–85 is 9.24 to 1 and for 1985–86 is 9.13 to 1. There is substantial evidence to support the conclusion that the student-staff ratio falls below the 14-to-1 minimum. David Bye is the only teacher

licensed to teach the course and is scheduled to work half-time.

■ Several teachers are employed to teach auto mechanics. The student-teacher ratio for 1983–84 was 17.44 to 1; the projected ratio for 1984–85 is 13.89 to 1; and for 1985–86 is 14.41 to 1. Substantial evidence supports the conclusion that it is one of the borderline courses and that a position should be discontinued. Charles McFarlin is the least senior teacher licensed to teach auto mechanics who would have been teaching in the area.

■ One teacher was employed as a remedial reading instructor. Remedial reading is a related service rather than a program. The district discontinued the position because of a lack of pupils and financial conditions. The student-teacher ratio for 1983–84 was not computed; the projected ratio for 1984–85 is 5.71 to 1 and for 1985–86 is 6.57 to 1. Since remedial reading is not a program, low ratios would not cause the State to consider eliminating the program. However, the low ratios support the conclusion that the position should be discontinued. In addition, discontinuing the position accords with the district's goal of cutting related services before cutting programs.

Mathematics is also a related course that is taught by two instructors. Citing budgetary reasons, the district discontinued one position and placed the least senior teacher on unrequested leave. The decision is consistent with the goals and criteria which were adopted for determining which programs with adequate enrollment were to be cut.

Graphics is a multi-instructor course with adequate enrollment. Citing budgetary reasons, the district discontinued one position and placed the least senior teacher on unrequested leave. The decision is consistent with the goals and criteria which were adopted for determining which programs with adequate enrollment were to be cut.

Welding is a related course which is taught by only one instructor. Citing budgetary reasons, the district discontinued the welding position and placed the instructor on unrequested leave. It is proposed that the instructor will work one-quarter time. The district's decision is consistent with the goals and criteria which were adopted to determine which programs with adequate enrollment were to be cut.

Upholstery is a multi-instructor course with adequate enrollment. Citing budgetary reasons, the district discontinued one position and placed the least senior teacher on unrequested leave. It is proposed that the instructor will be offered a nine-month, full-time position. The decision is consistent with the goals and criteria which were adopted for determining which programs with adequate enrollment were to be cut.

Barbara Glansman is licensed to teach technical tutoring. She is the least senior technical tutor. Another teacher, whose position in job-seeking and keeping was discontinued, exercised seniority rights and bumped Glansman. The district placed Glansman on unrequested leave. We find no indications of arbitrariness in any of the unrequested leave placements listed above.

■ Three teachers are employed to teach dental lab. The district discontinued one position, citing declining enrollment. The actual student-teacher ratio for 1983–84 was 11.23 to 1; projected ratio for 1984–85 is 10 to 1 and 1985–86 is 14.89 to one. The district acknowledges that by the time of the hearing enrollment was increasing in the program. With the proposed reduction the ratio would be 20.7 to 1, well above the 10-to-1 minimum for a health-related course. Testimony indicates that the workroom has space for only 16 students; placement is excellent; there is a 48-name waiting list; if cuts are made accreditation will be endangered; and that members of the Minnesota Dental Laboratory Association have expressed fears that high student-staff ratios will adversely affect the quality of the students' education. The Director of the AVTI acknowledged that if enrollment stayed the way it was and a cut were made, the school might have to limit the number of students in the program. Based on the school's own criteria, projected ratios for

1985–86, and testimony that enrollment may now have to be limited, we conclude that the decision to discontinue a dental lab position for declining enrollment was arbitrary and unreasonable.

### III

The teachers also contend that the district violated the seniority rights of Harold Krenz, Leslie Dorendorf and Kerryl Swanson when it placed them on unrequested leave.

Harold Krenz has a seniority date of July 1, 1972, and is licensed to teach in the mobile home maintenance program. Robert Boyce is also licensed to teach in the mobile home maintenance program. His seniority date is August 1, 1976. He is being retained by the district to teach in other areas for which he is licensed. The district tentatively plans to maintain the mobile home curriculum by retaining Krenz to teach part-time and apportioning his remaining teaching responsibilities to those teachers who both prepared portions of the course and are licensed to teach that portion, for instance, heating and refrigeration. The hearing examiner found that if Krenz is placed on unrequested leave of absence, there will not be any qualified and licensed teacher with less seniority than Krenz who is retained to teach in a position for which Krenz is licensed. The hearing examiner recommended that Krenz be placed on unrequested leave.

The teachers do not challenge Krenz's placement on unrequested leave because Boyce is being retained. Rather, they challenge his placement on unrequested leave because Krenz will be teaching one-third of the time he formerly taught, and others less senior than he will be teaching portions of the mobile home maintenance course.

■ The collective bargaining agreement states that a teacher may not be placed on unrequested leave "if there is any other qualified and licensed teacher with less seniority in the same subject matter category." A qualified teacher is one who is licensed by the State Board of Edu-

cation in the subject matter category. In this case the teachers who may be teaching portions of the mobile home maintenance course and are less senior than Krenz are not qualified or licensed in mobile home maintenance, but are licensed in other subject matter categories, such as heating and refrigeration. Thus, there is no qualified and licensed teacher in mobile home maintenance with less seniority than Krenz who is being retained to teach mobile home maintenance. The district did not violate the agreement by placing Krenz on unrequested leave.

■ Leslie Dorendorf is the only teacher licensed in horticulture. She assumes she will be teaching part-time and argues that since the district has a stated goal of maintaining a horticulture curriculum, one of the vocational agricultural teachers who is less senior than Dorendorf is "likely" to supplement in the horticulture area. Because there are no other teachers licensed in horticulture, the district did not violate the seniority agreement by placing Dorendorf on unrequested leave.

Kerryl Swanson was also placed on unrequested leave. The record with regard to her placement on unrequested leave is limited. She is the only teacher who is licensed in secretary/clerical without shorthand. She is also licensed in support service manager. There are five teachers junior to her who are also licensed in support service manager. The district did not propose to eliminate either a secretarial/clerical position or support service manager position. A school district official testified that Swanson was proposed for placement on unrequested leave because senior teachers had exercised "bumping" rights. The bumping sequence is not explained in the record.

■ The teachers contend that because the bumping sequence is unexplained, the district did not meet its burden of proof with regard to Swanson's placement on unrequested leave. However, there is unrebutted testimony that if Swanson is placed on unrequested leave, there will be no qual-

ified and licensed teacher with less seniority than her who is retained to teach in a position for which she is licensed. While the record is limited, substantial evidence supports the finding that her seniority rights were not violated.

### DECISION

Substantial evidence supports the conclusion that financial limitations present in the district warrant placement of the teachers on unrequested leave. Measured by the criteria that it adopted, the district's actions were supported by substantial evidence, except that it arbitrarily placed an instructor in dental lab on unrequested leave of absence. The district did not violate the seniority provisions of its agreement with regard to Krenz, Dorendorf or Swanson.

Affirmed in part and reversed in part.