In the Matter of the Placement of
Edward BUYS on Requested
Leave of Absence.

STATE of Minnesota, ex rel. Edward
BUYS, Relator,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 891, CANBY, Minnesota,
Respondent.

No. C2–86–1194.

Court of Appeals of Minnesota.

Dec. 30, 1986.

Review Denied March 13, 1987.

Dale G. Swanson, Forest Lake, for rela-
tor.

Paul W. Hetland, David S. Bartel, Knutson, Flynn & Hetland, P.A., St. Paul, for respondent.

Heard, considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ.

## OPINION

LESLIE, Judge.

Relator was the elementary principal for respondent Independent School District No. 891. The school district realigned administrative positions for the 1986–87 school year, displacing relator to the position of teacher. Relator claims the district erred by failing to use the statutory seniority system and by applying a directive not properly adopted in compliance with statutory rule-making procedures. We affirm.

## FACTS

Due to financial limitations, respondent Independent School District No. 891 determined certain administrative positions should be discontinued at the end of the 1985–86 school year. Because of the elimination of certain positions and the restructuring of other positions, relator Edward Buys was "bumped" from his position as elementary principal.

Prior to this action, the school district employed four administrators. Bernard Ailts held the position of superintendent, Lyle Tobin held the position of secondary principal and Buys held the position of elementary principal. The district employed a fourth administrator who acted as half-time assistant secondary principal and half-time teacher.

Because of financial limitations, the school board eliminated the full-time positions of superintendent and high school principal and restructured administrative assignments. The board decided that Ailts would hold the position of half-time superintendent and half-time secondary principal. This arrangement "bumped" Tobin from his position as secondary principal.

Because Tobin is more senior than Buys, the school board placed Tobin as elementary principal, thus displacing Buys. Tobin's teaching license does not specifically state that he is qualified to act as an elementary principal. However, the Minnesota Department of Education advised Tobin that his license to serve as superintendent also qualified him to serve as elementary principal. Buys was "bumped" from his position and was later hired as a teacher for the 1986–87 school year.

Buys requested a hearing regarding his proposed unrequested leave of absence placement pursuant to Minn.Stat. § 125.12, subd. 4 (1984). At the hearing, Buys argued that the district should strictly comply with the statutory seniority system. He also claimed that Tobin is not qualified to assume the position of elementary principal because the directive issued by the State Board of Education was invalid for failure to comply with rule-making procedures. The hearing examiner refused to receive evidence proffered to establish the invalidity of the directive and recommended that Buys be placed on unrequested leave of absence.

Buys submitted copies of evidence to the school board, so that the board members would have opportunity to review the materials prior to making their determination. The board adopted in full the recommendations of the hearing examiner. The board later informed Buys that the materials were made available to the board, but were not part of the record. On July 18, 1986 Buys petitioned for a writ of certiorari to review the May 20 decision of the school district, the writ issuing that same day.

## ISSUES

1. Did the school district err by appointing a less senior superintendent to the position of secondary principal-superintendent, thereby displacing the more-senior secondary principal?

2. Whether the Department of Education properly interpreted its licensure rules?

## ANALYSIS

When reviewing a decision of a school district, this court's scope of review is limited. *Bye v. Special Intermediate School District No. 916*, 379 N.W.2d 653, 656 (Minn.Ct.App.1986). We will not set aside the board's decision unless it is arbitrary or unreasonable, not supported by substantial evidence on the record, not within its jurisdiction, or based upon an erroneous theory of law. *Id.*

1. Buys contends that the district based its decisions upon erroneous theories of law. His first contention is that the district erred by not strictly complying with the seniority provisions of Minnesota statutes. The seniority rights of teachers and administrators in cities not of the first class are governed by Minn.Stat. § 125.12, subd. 6b (1984), which provides:

> (b) Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by the school district.
>
>   \*  \*  \*  \*  \*  \*
>
> (e) Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to other available positions in the school district in fields in which they are licensed. Reinstatement shall be in the inverse order of placement on leave of absence.

Buys contends the district erred by not complying with this statute. Ailts has less seniority than Tobin, yet Ailts was given the position of secondary principal-superintendent, thereby displacing Tobin from his position as secondary principal.

■ Buys concedes that the superintendent portion of Ailts' new position is governed by Minn.Stat. § 123.34, subd. 9 (1984) which provides:

> The authority for selection and employment of a superintendent shall be vested in the school board in all cases. Notwithstanding the provisions of sections 122.-532, 122.541, and 125.12, subdivision 6a or 6b, or any other law to the contrary, no individual shall have a right to employment as a superintendent based on seniority or order of employment in any district.

This statute makes it clear that school boards may hire who they wish for superintendent since they must work so closely with the superintendent. *Grinolds v. Independent School District No. 597*, 346 N.W.2d 123, 127 (Minn.1984).

However, Buys claims that Ailts has no seniority right to the high school principal portion of the new position. In order to comply with the seniority requirements, the district should not have offered the half-time principal position to Ailts.

The Minnesota Supreme Court recently addressed a similar issue regarding restructuring of teaching positions. In *Brandhorst v. Special School District No. 1*, 392 N.W.2d 888 (Minn.1986), the supreme court affirmed the decision of this court and held that the teacher tenure act mandates realignment of assignments to protect seniority rights.

*Brandhorst* was decided based on an interpretation of the teacher tenure act, Minn.Stat. § 125.17 (1984), which applies to cities of the first class. The present case involves application of Minn.Stat. § 125.12 (1984), which applies to cities not of the first class. While the statutes are different, the concept of seniority is the same in each. Interpretations of these two statutes have followed an interwoven path. *See Berland v. Special School District No. 1*, 314 N.W.2d 809, 811 (Minn.1981) (a § 125.-17 case in which the supreme court referred to § 125.12 cases as "[representing] this court's view of the legislative intent to protect tenured teachers, either in cities of the first class or those not of the first class.")

In *Brandhorst*, the school district retained ten teachers who were less senior than those terminated for lack of positions. The district claimed the less senior teachers were retained because each held licensure

in secondary vocational teaching and industrial arts, and that a majority of the classes required both licenses. Those teachers terminated held only a license in industrial arts.

The supreme court ruled that the suspended teachers may be entitled to new positions under a practical and reasonable realignment scheme. The court stated:

[R]easonable realignment of course assignments, in order to protect seniority rights, is mandated by the Teacher Tenure Act. Realignment without regard to practicality, the interests of the public, or the welfare of the students, however, is not required. Further, each course offered is not a separate position which has to be assigned to the most senior teacher licensed to teach it. If the district, in good faith, exercises its discretion and offers a certain vocational course or courses forming the major portion of a teacher's assignment, the remainder of that teacher's schedule may be composed of courses that, separately, could be taught by a more senior industrial arts teacher.

*Brandhorst,* 392 N.W.2d at 889.

In a companion case released that same day, the court listed factors which should be considered by school districts in realigning positions:

While it is impossible to articulate a precise definition or test by which these difficult staff reductions may be decided, it is possible to enumerate the relevant factors that must be considered in each case, namely, the teacher's length of service, the duration and scope of the teacher's license, the school district's needs reflecting the welfare of the students and the public, and the ease of reassignment or realignment of course schedules to facilitate a retention of the most senior teachers.

*Strand v. Special School District No. 1,* 392 N.W.2d 881, 885 (Minn.1986).

Although the present case involves realignment of administrators instead of teachers, the same principles apply. Superintendents and principals are deemed to be "teachers" for purposes of applying the seniority provisions in Minnesota statutes. Minn.Stat. § 125.12, subd. 1 (1984).

In the instant matter, the district considered other options before deciding to appoint Ailts as secondary principal-superintendent. The district decided that combining the positions of secondary principal and superintendent was educationally preferable to combining the superintendent position with the elementary principal position. Specifically, the district found that the needs of the elementary school required a full-time principal present in that building. The high school on the other hand, has an assistant principal who would be available when the principal is away performing the superintendent functions. The hearing examiner found that combining the superintendent and elementary principal positions would be educationally unsound.

Buys also contends the district erred when it eliminated the full-time superintendent position because of the mandate that in schools of this type, "the superintendent shall devote at least two-thirds of the school day to the administration and supervision of the schools." Minn.R. 3500.0600 Subp. 2 (1985). Buys contends that the district's decision to have a half-time superintendent falls short of this requirement.

The district defends its decision to create a secondary principal-superintendent position on the ground that Ailts, acting as both secondary principal and superintendent will be devoting his *entire* day to the "administration and supervision of the schools." According to Minn.Stat. § 123.-34, subd. 10 (1984), the principal shall provide administrative, supervisory and instructional leadership services. Furthermore, the Minnesota Supreme Court has acknowledged that districts have the right to change the superintendent's job description to half-time. *Grinolds,* 346 N.W.2d at 127.

In the present case, the district, faced with declining enrollment and financial dif-

ficulties, chose to split the superintendent's duties between secondary principal and superintendent. The superintendent will, in fact, be devoting at least two-thirds of the day in administrative and supervisory capacities. It appears from the record that the district has carefully considered relevant factors in its determination to realign its administrative positions. We affirm the district's decision to combine the secondary principal and superintendent positions.

2. Buys asserts the district improperly appointed Tobin to the position of elementary principal. Buys claims the district relied on an invalid rule which was never adopted according to the Minnesota Administrative Procedures Act, Minn.Stat. §§ 14.-01–14.70 (1984). Tobin's teaching certificate does not state that he is qualified to act as elementary principal. It does, however, state that he is qualified to act as superintendent. The district found that Tobin was qualified and appointed him to the position of elementary principal. The district based its conclusion that Tobin was qualified for the position on a letter written by G.B. Droubie, manager of personnel licensing and placement at the Minnesota Department of Education. The letter reads as follows:

Dear Mr. Tobin:

In reply to your inquiry of January 7, 1986, our records show that you hold a life license to serve as a superintendent and secondary principal. Please be advised that your life license to serve as a superintendent also qualifies you to legally serve as an elementary principal. You may show this letter to your superintendent and board as evidence of your elementary administrative qualifications.

At his deposition, Droubie stated that his opinion regarding Tobin's qualifications was based on two items. The first is a "directive" issued by the State Board of Education, supplementing its 1963 manual:

Directive: A superintendent's certificate is valid for an elementary school principalship.

This directive was never adopted in final form in any department manual, and Drou-

bie acknowledged that after August, 1967, the directive would no longer be applied to anyone issued a superintendent license. Current law requires a separate license for each administrative position:

Persons holding positions as superintendents and principals must be licensed as follows. Superintendents and assistant superintendents must hold Minnesota licenses as superintendents of schools. Elementary school principals and assistant elementary school principals must hold licenses as elementary school principals. Secondary school principals and assistant secondary school principals must hold Minnesota licenses as secondary school principals.

Minn.R. 3510.0200 (1985).

The second item Droubie relied upon is a memorandum from Michael J. Bradley, Assistant Attorney General. In that memorandum, dated March 29, 1978, Bradley responded to Droubie's inquiry regarding administrative licensure. Bradley stated that a new rule issued by the State Department of Education changed prior policy to require a separate license to be a principal. He indicated that any superintendent who held a life license prior to the effective date of the new rule in 1974, however, would still be licensed in the elementary principal capacity without fulfilling any further obligations. This, he stated, is because the life license is a property right and is constitutionally protected.

Buys contends the district erred by relying on a directive that was not properly adopted in compliance with statutory rulemaking procedures. However, the Department of Education has the authority to interpret its licensure rules. *See* Minn. Stat. § 125.05 (1984). Similarly, Droubie has the authority to rely on the Attorney General's interpretation of Department of Education rules. Furthermore, this court will defer to an agency's interpretation of law where that interpretation is one of long-standing. *Wenzel v. Meeker County Welfare Board,* 346 N.W.2d 680, 683 (Minn.Ct.App.1984). Because the Depart-

ment's interpretation is of long-standing, we find that the interpretation was a valid one. To do otherwise could jeopardize the positions of other principals in Minnesota. We hold that Tobin was validly licensed for the position of elementary principal.

## DECISION

The district has discretion to realign its administrators with regard to practicality and the interests of the public and students, even if some seniority rights are sacrificed. Because it appears the district realigned its administrators in good faith, we affirm the decision to combine the secondary principal and superintendent positions.

The Department of Education had the authority to interpret its rules to provide that a superintendent's license qualifies one for elementary principal. Because the interpretation is one of long-standing, we affirm that interpretation.

Affirmed.