JoAnne C. HINCKLEY, Relator,

v.

SCHOOL BOARD OF INDEPENDENT SCHOOL DISTRICT NO. 2167, Lakeview, Minnesota, Respondent.

No. A03–1234.

Court of Appeals of Minnesota.

April 27, 2004.

Roger J. Aronson, Rischmiller, Knippel Aronson, Minneapolis, MN, for relator.

Patricia A. Maloney, Eric J. Quiring, Ratwik, Roszak Maloney, P.A., Minneapolis, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge; SCHUMACHER, Judge; and WRIGHT, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

This is an appeal by writ of certiorari from the decision of respondent School Board of Independent School District No. 2167, Lakeview, Minnesota, to eliminate a principal position and place relator JoAnne C. Hinckley on unrequested leave of absence. Hinckley argues the school district proceeded on an erroneous theory of law in determining she was not properly licensed to supervise a K–12 program located in one building and erred in refusing to realign positions to protect her seniority rights. We affirm.

## FACTS

Hinckley was hired by the school district as an elementary school principal in 1998. She is licensed to teach elementary education grades 1–6 and moderate-to-severe mentally handicapped education, grades K–12. She also holds licenses to serve as director of special education and as an elementary school principal. In 1999, the school district hired David Fjeldheim as a high school principal and in 2000 hired Eric Von Broering as a middle school principal. Both Fjeldheim and Von Broering hold a K–12 principal license.

During the 2002–2003 academic year, the school district closed its elementary and middle schools and opened a new school housing its entire K–12 program. During that year, Fjeldheim served as the principal for grades 7–12, Von Broering as the principal for grades K–6, and Hinckley as a principal on special assignment. Hinckley's duties included supervising federal programs, various title programs, entitlement programs, and special education.

As a result of budget shortages, the school district decided to reduce its administrative staff by one person for the 2003–2004 academic year To this end, the school district created two new administrative positions—K–12 principal and K–12 assistant to the superintendent and the principal. The school board appointed Fjeldheim to the position of K–12 principal and Von Broering to the position of assistant to the superintendent/principal. Hinckley's position was discontinued and, by a majority vote, the school board proposed Hinckley for placement on unrequested leave of absence effective June 30, 2003.

Hinckley requested a hearing regarding her proposed unrequested leave of absence placement pursuant to Minn.Stat. § 122A.40, subd. 9 (2002). The hearing officer determined Hinckley's license as an elementary school principal did not authorize her to serve as a K–12 principal. Moreover, the hearing officer determined the school district is not required to realign job duties to create a position for which Hinckley would be properly licensed.

## ISSUES

1. Did the school district err in determining Hinckley was not properly licensed to supervise a K–12 program located in one building?

2. Did the school district err in refusing to realign positions to protect Hinckley's seniority rights?

## ANALYSIS

1. A school district acts in an administrative capacity when making personnel decisions. *State ex rel. Quiring v. Indep. Sch. Dist. No. 173,* 623 N.W.2d 634, 637 (Minn.App.2001), *review denied* (Minn. Mar. 20, 2001). A reviewing court will reverse a school board's determination "when it is fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law." *Dokmo v. Indep. Sch. Dist. No. 11,* 459 N.W.2d 671, 675 (Minn.1990). A court in a school case "is not at liberty to hear the case de novo and substitute its findings for those of the school board." *Kroll v. Indep. Sch. Dist. No. 593,* 304 N.W.2d 338, 342 (Minn.1981). Statutory interpretation, however, presents a question of law, which we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

The court's goal in statutory interpretation is to give effect to the intention of the legislature in drafting the statute. *Education Minnesota–Chisholm, v. Indep. Sch. Dist. No.695,* 662 N.W.2d 139, 143 (Minn.2003); *see also* Minn.Stat. § 645.16 (2002) (stating, "object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature"). We first look to see whether the statute's language, on its face, is clear or ambiguous. *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). A statute is only ambiguous when its language is subject to more than one reasonable interpretation. *Id.* In the absence of ambiguous language, we need not consider legislative history because the words evince the clear intent of the legislature. *Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 274 (Minn.1995).

Hinckley argues the school district proceeded on an erroneous theory of law in determining she was not properly licensed to supervise a K–12 program located in one building. Hinckley points to language in Minn.Stat. § 123B.147, subd. 1 (2002), stating: "If pupils in kindergarten through grade 12 attend school in one building, one principal may supervise the building." She notes that in 1991, when this language was added, only two types of principal licenses existed—elementary school principal and secondary school principal. 1991 Minn. Laws ch. 265, art. 9, § 35 (showing above quoted change to section 123B.147's predecessor Minn.Stat. § 123.34, subd. 10 (1990)); Minn. R. 3510.0200, 3510.0400 (1991) (providing for either elementary principal's license or secondary principal's license).

Hinckley argues, therefore, that the legislature's intent in enacting the contested language was to allow a principal with either an elementary or secondary school principal license to supervise a K–12 program located in one building. To buttress this argument, Hinckley points to legislative history regarding a proposed clarifying amendment to section 123B.147 that was never codified into law.

Section 123B.147, subdivision 1, provides that "[e]ach public school building . . . may be under the supervision of a principal" and "[i]f pupils in kindergarten through grade 12 attend school in one building, one principal may supervise the building." Section 123B.147 further provides that each principal "shall hold a valid license in the assigned position of supervision and administration." Minn.Stat. § 123B.147, subd. 2 (2002). Under the canons of statutory interpretation "shall" means mandatory. Minn.Stat. § 645.44, subd. 16 (2002).

The language of section 123B.147 is unambiguous. It provides that one principal may supervise a K–12 program located in one building but makes no exception to the stated rule that each principal must

hold a license for the assigned supervisor's position. We must effectuate the legislature's intent as expressed in its clear choice of words and may not substitute Hinckley's proposed interpretation, which is based on legislative history. *See Phelps,* 537 N.W.2d at 274 (refusing to consider legislative history when legislature's intent is clearly manifested by unambiguous language).

Hinckley possesses an elementary school principal license and does not possess either a secondary school principal license or a K–12 principal license. We note current licensure rules provide a mechanism by which the holder of an elementary school principal license may obtain a K–12 principal license. *See* Minn. R. 3512.0200, subp. 4 (2003) (providing person holding elementary school principal license must complete field experience of at least 200 hours in secondary administration to qualify for K–12 principal license). To allow Hinckley to act as K–12 principal or K–12 assistant principal would violate the unambiguous language of section 123B.147. Thus, the school district did not proceed under an erroneous interpretation of the law.

■ 2. Hinckley argues the school district erred when it refused to "realign" positions to protect her seniority rights. Hinckley points to testimony by the school district's superintendent that Hinckley is licensed to perform all but two of the duties included in the job description for the position of K–12 assistant to the superintendent/principal. Based on this testimony, Hinckley appears to argue the school district, because of her seniority, had a duty to reassign job duties so as to retain her in an administrative position. Hinckley cites *Strand v. Special Sch. Dist. No. 1,* 392 N.W.2d 881 (Minn.1986), to support her position. *Strand* holds that under the Teacher Tenure Act a school district is obligated to attempt realignment

of teaching assignments in order to retain senior teachers. *Id.* at 886; *see Westgard v. Indep. Sch. Dist. No. 745,* 400 N.W.2d 341, 344 (Minn.App.1987) (extending holding of *Strand* to school districts that are not in cities of first class), *review denied* (Minn. Apr. 17, 1987). The same principles applied to teachers in *Strand* apply to principals. *See* Minn.Stat. § 122A.40, subd. 1 (term "teacher" includes principals); *Buys v. Indep. Sch. Dist. No. 891,* 398 N.W.2d 622, 625 (Minn.App.1986) (stating same), *review denied* (Minn. Mar. 13, 1987).

■ But realignment does not require a school board to change the job duties of a position to accommodate the licensure of a more senior teacher. In *Strand,* a teacher's position was discontinued, and she could not directly bump a less-senior teacher because she was "not licensed" for the position held by the less-senior teacher. *Strand,* 392 N.W.2d at 883. The remedy imposed in Strand's favor did not require the school district to change the job duties of the position held by the less-senior teacher to comport with the license held by Strand. Rather, realignment was imposed, which involved reassigning a teacher more senior to Strand. The reassignment opened a position for which Strand was properly licensed. In sum, realignment resulted in the laying off of the least-senior teacher. *Id.* at 886.

■ Here, there is no *Strand* realignment available to Hinckley because she does not hold a valid license to serve as a K–12 principal or K–12 assistant principal. *See, e.g., Matter of Nelson,* 416 N.W.2d 848, 850–51 (Minn.App.1987) (refusing to impose *Strand* realignment where senior teachers were not "qualified" for proposed area of assignment), *review denied* (Minn. Mar. 18, 1988); *State ex rel. Haak v. Indep. Sch. Dist. No. 625,* 367 N.W.2d 461,

467 (noting, "person whose position has been discontinued may have reassignment rights to positions ... for which the person is qualified").

## DECISION

The school district's decision to place Hinckley on unrequested leave of absence was not arbitrary or unreasonable and was not based on an erroneous theory of law.

**Affirmed.**