Gerald WHALEY, petitioner, Respondent,

v.

ANOKA–HENNEPIN INDEPENDENT
SCHOOL DISTRICT NO. 11,
Appellant.

No. 81–1256.

Supreme Court of Minnesota.

Oct. 29, 1982.

Peterson, Popovich, Knutson & Flynn, James E. Knutson and David S. Bartel, St. Paul, for appellant.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Deborah A. Schmedemann, Gary Green, Minn. Educ. Ass'n, St. Paul, for respondent.

AMDAHL, Chief Justice.

This is an appeal by defendant Anoka-Hennepin Independent School District No. 11 (School Board) from an order of Judge Richard J. Kantorowicz of the Hennepin County District Court, dated October 22, 1981, which set aside the School Board's termination of the teaching contract of respondent Gerald Whaley. The district court found that the evidence before the School Board did not rise to the level necessary to demonstrate Whaley's unfitness to teach under Minn.Stat. § 125.12, subd. 6 (1980), and that the termination was erroneous as a matter of law. We reverse.

Prior to his termination, respondent had served for 19 consecutive years as a teacher and principal in the Anoka-Hennepin School District, the last 3 of these years as a reading teacher for grades 4, 5, and 6 at the Sandberg Elementary School. On May 5, 1980, respondent received a notice of deficiency, pursuant to Minn.Stat. § 125.12, subd. 6 (1980).[1] This notice supplemented a similar notice issued in 1978 under which no action had been taken to change respondent's teaching status. The May 1980 notice alleged the following deficiencies: (1) poor rapport with students; (2) insufficient communications with parents and fellow staff members; (3) inappropriate use of class time; (4) failure to be punctual or appear at appointments; (5) failure to follow the School Board's adopted reading program; (6) irrational grading of students; and (7) lack of student progress. Following this notice, respondent conferred with several school administrators and was advised that termination of his contract would be recommended if these deficiencies were not corrected during the upcoming school year.

When school resumed for the 1980–81 school year, school administrators evaluated Whaley's teaching methods and behavior by observing his classroom on six separate occasions between September and January.

---

1. The full text of subdivision 6 reads as follows:

    Subd. 6. Grounds for termination. A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:

    (a) Inefficiency;

    (b) Neglect of duty, or persistent violation of school laws, rules, regulations, or directives;

    (c) Conduct unbecoming a teacher which materially impairs his educational effectiveness;

    (d) Other good and sufficient grounds rendering the teacher unfit to perform his duties.

    A contract shall not be terminated upon one of the grounds specified in clauses (a), (b), (c), or (d), unless the teacher shall have failed to correct the deficiency after being given written notice of the specific items of complaint and reasonable time within which to remedy them. Minn.Stat. § 125.12, subd. 6 (1980).

Whaley participated in this evaluation by meeting with the staff members appraising his teaching performance.

On February 10, 1981, some 9 months after having received the May 5, 1980, notice of deficiency, Whaley was given a notice of proposed termination. In its statement of the reasons for the proposed termination, the School Board listed the grounds specified in Minn.Stat. § 125.12, subd. 6(a), (b) and (c) (1980), and also asserted the following: (1) lack of rapport with students; (2) lack of student progress; and (3) lack of appropriate disciplinary techniques.

Upon Whaley's request, a hearing was conducted before an independent hearing officer on March 10, 11, and 12, 1981, to determine whether there was sufficient cause for Whaley's termination. The school district's evidence consisted of testimony from the three administrators who observed Whaley in the classroom, four of Whaley's students, four teachers, and one parent. Whaley's evidence consisted of his own testimony and the testimony of five students and one parent. No teachers testified on Whaley's behalf.

On March 30, 1981, after consideration of the evidence at the hearing before the hearing officer, the School Board passed a resolution terminating Whaley's contract at the end of the 1980–81 school year. The resolution includes 44 factual findings directly related to Whaley's conduct as a teacher. From these findings the School Board concluded, in accordance with Minn.Stat. § 125.12, subd. 6(a)–(d) (1980), that Whaley: (1) was inefficient; (2) neglected his duties; (3) failed to follow his principal's directions; and (4) was unfit to perform his duties. Whaley successfully petitioned the district court to issue a Writ of Certiorari to the School Board. The district court

then reviewed the matter and issued an order setting aside the School Board's resolution and reinstating Whaley to his teaching position. The School Board appeals from that order.

■ When deciding whether to hire or to terminate a teacher, a board of education is acting in an administrative capacity. On appeal to this court, a school board's decision to terminate a teacher will be set aside only if the decision is "fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law." *Ganyo v. Independent School District No. 832,* 311 N.W.2d 497, 500 (Minn.1981) (citations omitted). This appeal raises the issue of whether the School Board's termination of Whaley's continuing contract was based upon substantial evidence in the record.[2]

■ This court views the record in its entirety to determine whether the board's findings are supported by substantial evidence. *Liffrig v. Independent School District No. 442,* 292 N.W.2d 726, 729 (Minn. 1979). The standard of review is narrow. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Soo Line Railroad v. Minnesota Department of Transportation,* 304 N.W.2d 301, 306 (Minn. 1981) (quoting 4 K. Davis, *Administrative Law Treatise* § 29.02 (1978)). In so reviewing the probative force of the evidence, "it is not the role of this court to try the matter de novo and to substitute its findings for those of the school board." *Lucas v. Board of Education,* 277 N.W.2d 524, 526 (Minn.1979). This limited judicial role in the application of substantial evidence review stems from the recognition that con-

---

2. As an additional ground of appeal, appellant argues that the district court erred by applying an improper standard in reviewing the School Board's decision to terminate Whaley's teaching contract. However, this court has clearly stated that it "owes no deference to the trial court's determination." *Kroll v. Independent School District No. 593,* 304 N.W.2d 338, 342 (Minn.1981). Because this court conducts an independent review of the entire record before

the School Board without according deference to the same review conducted by the court below, the question of whether the district court utilized the correct standard of review has no bearing on our disposition of this matter. *See Urban Council on Mobility v. Minnesota Department of Natural Resources,* 289 N.W.2d 729, 732–33 (Minn.1980); *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn. 1977).

siderable judicial deference should be extended to the factfinding processes of a school board acting in an administrative capacity. *Anderson v. Consolidated School District No. 144,* 196 Minn. 256, 257–58, 264 N.W. 784, 784–85 (1936). *Cf. City of North St. Paul v. Minnesota Water Resources Board,* 260 N.W.2d 584, 586–87 (Minn.1977) (discussion of scope and purpose of substantial evidence review under Minnesota Administrative Procedure Act).

Applying these standards in our review of this matter, we find that there is substantial evidence in the record to support the School Board's decision to terminate Whaley's teaching contract. The School Board based its decision on 44 findings of fact regarding Whaley's teaching performance. These findings generally concerned four major deficiencies: (a) excessive use of worksheets; (b) lack of rapport with students; (c) lack of appropriate student discipline; and (d) lack of student progress. Although there is evidence in the record from which conflicting inferences can be drawn with regard to each deficiency, in this action's present posture the critical inquiry is whether the inferences drawn by the School Board in the course of their decision to terminate Whaley's contract are supported by substantial evidence in the record considered as a whole. We find that they are so supported.

For example, the evidence in the record regarding Whaley's use of worksheets demonstrates that Whaley used worksheets more often and more extensively than other instructors at Sandberg, and that students complained of confusion and frustration as a result of such use. The school principal, who observed Whaley's use of worksheets and assessed the effect of such use on students, testified that Whaley used worksheets to such an extent that it frustrated students and inhibited their progress. Similarly, an instruction consultant who visited Whaley's classroom testified that Whaley's undue emphasis on the use of worksheets produced a poor learning environment. Considering the probative force of this evidence, and of related evidence throughout the record, we find that the School Board's determination that Whaley used worksheets improperly and to such excess that it justified the termination of his contract is supported by substantial evidence.

Of the remaining three deficiencies relied upon by the School Board in terminating Whaley's contract, the Board's findings regarding a lack of progress by Whaley's students are the most closely related to the statutory grounds for discharge and the most clearly supported by substantial evidence in the record. Evidence in the record supporting the School Board's determination that Whaley's students did not make satisfactory progress consists of testimony by staff and faculty members who observed his students in class and who measured their progress by the speed at which they moved through the skills tests and worksheets used in the district. For example, the school district's reading curriculum consultant observed Whaley's classroom and his students' written work, and then examined the records of similar students in the district's reading program. On this basis, she concluded that Whaley's students did not make satisfactory progress. A fellow teacher responsible for keeping records in the reading program also conducted a comparative review of student records and testified that the records indicated that Whaley's students progressed more slowly than other students in the reading program. Two other teachers who commonly worked with Whaley's students also testified that Whaley's students progressed more slowly than did their own students. No teachers testified on Whaley's behalf. The only countervailing evidence on this point in the record consists of testimony offered by a few of Whaley's students to the effect that they were satisfied with their progress in Whaley's class. In so reviewing the entire record, we conclude that substantial evidence supports the School Board's findings that Whaley's students made unsatisfactory progress due to his poor teaching performance. When so established, lack of student progress is sufficient to trigger the grounds for discharge under Minn.Stat. § 125.12, subd. 6 (1980).

Reversed.