**Dennis BERGER, Relator,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 706, Respondent.**

**No. CO–84–1500.**

Court of Appeals of Minnesota.

Feb. 12, 1985.

Virginia, have statutes granting tenants a right of redemption).

Eric R. Miller, St. Paul, for relator.

John M. Roszak, Knutson, Flynn & Hetland, St. Paul, for respondent.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI, and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

Dennis Berger appeals the school board's resolution adopting a hearing officer's recommendation which placed Berger on unrequested leave of absence. Berger claims the school board has misinterpreted the Teacher Mobility Incentives Statute, consequently keeping a less senior teacher on in his stead. We reverse.

## FACTS

Dennis Berger was a continuing contract teacher licensed to teach industrial arts in Independent School District No. 706, Virginia, Minnesota. Berger started with the district on September 5, 1967. Robert Chopp, another industrial arts teacher in the district, has a starting date of September 6, 1966.

Chopp requested a five-year leave of absence pursuant to the Teacher Mobility Incentives Statute, Minn.Stat. § 125.60, on March 8, 1978. The district granted the request. The State Department of Education approved, stating the leave was to commence March 28, 1978, and end March 28, 1983.

In January 1982, Chopp inquired as to his status under his extended leave. The district superintendent responded, presenting

two options—either return to teaching for the 1982–83 school year by giving notice to the district before February 1, 1982, or return to teaching for the 1983–84 school year by giving notice to the district before February 1, 1983, losing three months of retirement credit from March through May 1983.

By letter dated January 27, 1983, Chopp requested an additional leave of absence "without any loss in job seniority or security." The school board approved this additional leave on January 31, 1983.

In January 1984, the 1983–84 seniority list of all the teachers in the district was posted. Chopp was listed as senior to Berger. In a January 19, 1984 letter to the Superintendent, Berger questioned the propriety of granting an additional year of leave to Chopp. On January 23, 1984, the district approved the seniority list without any change in seniority ranking of either Chopp or Berger.

On January 27, 1984, Dick Bernard, Field Representative, Minnesota Education Association, advised Berger to file a formal grievance under the teachers' collective bargaining contract.

A grievance was filed with the district, on Berger's behalf, on January 30, 1984. The grievance was denied initially, processed to the next level, and denied again, then dropped on February 12, 1984.

Bernard testified at the hearing that his assumption in advising the filing of a grievance was that the district could not grant an additional year of leave absence. He subsequently concluded that the district did have that authority.

On March 12, 1984, the district proposed to place Berger upon unrequested leave of absence at the close of the 1983–84 school year.

After reviewing all the documents, Bernard wrote to the Superintendent claiming Berger had greater seniority than Chopp due to a gap in Chopp's seniority. Berger requested a statutory hearing pursuant to Minn.Stat. § 125.12 to present his claim regarding a break in Chopp's continuing service.

The hearing examiner concluded that, because Berger had not taken his challenge to grievance arbitration, he was precluded from raising it through his statutory hearing. In the alternative, the hearing officer determined that the five-year extended leave continued beyond the fifth year anniversary to the end of the 1983–84 school year, or that the general leave of absence for 1984–85 granted to Chopp by the district related back to the fifth anniversary to cure any break in continuous service.

The school board adopted the hearing examiner's findings. Berger appeals.

## ISSUES

1. Did the school board err in determining Berger's challenge to the seniority ranking should have been brought through the grievance arbitration process rather than at the unrequested leave of absence hearing?

2. Did the school board err in determining that Chopp did not lose seniority at any point during his six and one-half year leave?

## ANALYSIS

### Scope of Review

■ Court review of a school board's decision to place teachers on unrequested leave of absence is limited. *Kroll v. Independent School District No. 593*, 304 N.W.2d 338 (Minn.1981). The board's decision will be overturned only if it is "fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or based on an erroneous theory of law." *Whaley v. Anoka-Hennepin Ind. School District No. 11*, 325 N.W.2d 128, 130 (Minn. 1982).

### I.

■ The school board, in adopting the hearing examiner's findings, held that Berger's failure to challenge his seniority

ranking through arbitration procedures precluded him from raising the issue at his unrequested leave of absence (ULA) hearing. Berger contends that any grievance he has with the seniority ranking was properly brought at the ULA hearing.

■ A dispute concerning specific contractual provisions is a matter for the arbitrators, not the court, if either it is clear from the contract that the parties intended to arbitrate the controversy or if the intention of the parties is reasonably debatable as to the scope of the arbitration clause. *Atcas v. Credit Clearing Corporation of America,* 292 Minn. 334, 347, 197 N.W.2d 448, 452 (1972).

The question then is whether the procedure for placing teachers on ULA, including seniority ranking, was a negotiated term of the contract and, as such, subject to arbitration, or whether it was grounded in something outside the contract.

Minn.Stat. § 125.12, subd. 6a (Supp. 1983), allows for the collective bargaining representative of the teachers and the school board to negotiate a plan for placing teachers on ULA. If no such plan is negotiated, then a statutory plan set forth in Minn.Stat. § 125.12, subd. 6b (Supp.1983), becomes applicable.

Article XI, Section 4 of the collective bargaining contract between the teachers and the school district details the language controlling ULA.

*Subd. 1.* Teachers shall be placed on an unrequested leave of absence as provided for in M.S.A. 125.12, Subd. 6b(b) and (d). The following procedure for placement on leave of absence and reinstatement to positions shall be followed in cases of equal seniority. Each teacher is awarded points for his education and experience according to the following schedule. The teacher with the highest accumulated point total is retained or reinstated.
\* \* \*

Berger contends that the ULA procedure is not a term of the contract, but rather the procedure is statutory. Accordingly, he urges, any grievance with the procedure was properly brought at the ULA hearing.

The hearing examiner determined that the ULA plan was a negotiated "6a" plan. He found that the parties negotiated a plan which incorporated the statutory 6b provisions and provided a precise procedure to be used in cases of equal seniority—negotiated according to a statutory plan, but negotiated nonetheless. Therefore, the examiner concluded Berger's claim should have been submitted to grievance arbitration. Since it was not, the examiner determined Berger was precluded from raising his claim at his statutory hearing because he failed to exhaust an administrative remedy, relying on *Ellerbrock v. Board of Education, Special School District No. 6,* 269 N.W.2d 858 (Minn.1978).

The *Ellerbrock* court determined that a teacher who asserted a claim regarding her seniority status, but failed to go to grievance arbitration, was precluded from pursuing such a claim as a part of her statutory hearing. The seniority dispute involved an extensive portion of a negotiated 6a plan defining seniority for teachers who had been on maternity leaves of absence. Therefore, the teacher's entire claim arose under and was governed by the terms of the unique, negotiated unrequested leave of absence plan found in the contract.

The hearing examiner's reliance on *Ellerbrock* is misplaced. The parties did not negotiate a plan. Subdivision 1 merely informs teachers that no ULA plan has been negotiated and the statutory plan will be followed. The provision details a tie-breaking procedure, but does so at the direction of 6b(b), in compliance with the statutory plan. The parties did not intend to have ULA matters submitted to arbitrators. Indeed, their intent is not even reasonably debatable. Their intent was to invoke the statutorily-prescribed procedure for a ULA hearing, and, accordingly, it was Berger's prerogative to contest his seniority ranking at the ULA hearing.

Finally, we note that Berger's entire claim deals solely with the school board's interpretation of Minn.Stat. § 125.60 (1982

and Supp.1983), the Teacher Mobility Incentives Statute. It has no basis within the teachers' collective bargaining contract.

## II.

█ Continuous service is not broken and seniority is preserved when a teacher is granted an extended leave of absence pursuant to the Teacher Mobility Incentives Statute, Minn.Stat. § 125.60. This statute is designed to permit more senior teachers to take leaves of absence either for the purpose of additional education, or possibly for a career change.

The school board granted Chopp a five-year extended leave of absence pursuant to Minn.Stat. § 125.60, subd. 2, effective March 28, 1978, through March 28, 1983. Additionally, Chopp was granted a one-year "general leave" pursuant to Minn.Stat. § 125.60, subd. 6. Both parties are in agreement as to the protected status of the first five years. At issue is the leave status from March 28, 1983, to the start of the 1984–85 school year.

Berger claims that, because no leave existed for the balance of the 1982–83 school year, Chopp lost his seniority status as of March 28, 1983. The district contends that the five-year extended leave lasted through the end of May 1983.

Minn.Stat. § 125.60, subd. 2 (Supp.1983), is quite clear in providing that no extended leave may exceed five years:

> The maximum duration of an extended leave of absence pursuant to this section shall be determined by mutual agreement of the board and the teacher at the time the leave is granted and shall be at least three but not more than five years.

The school board suggests that by looking at subdivision 3, the statute can be construed to actually permit extended leaves beyond five years. This subdivision provides in relevant part:

> [A] teacher on an extended leave of absence pursuant to this section shall

have the right to be reinstated to a position for which the teacher is licensed at the beginning of any school year which immediately follows a year of the extended leave of absence.

Minn.Stat. § 125.60, subd. 3 (Supp.1983).

The district interpreted this language to mean that reinstatement can only take place at the start of a school year, and therefore Chopp could only have been reinstated at the start of the 1983–84 school year and not on March 28, 1983. We cannot agree. The statute contains a clear five-year limit on extended leaves.[1] There is nothing in the statute to support any enlargement of this limit. If we were to accept the district's logic, a teacher would be able to commence a leave in September, just a few short days after school had started, and return nearly six years later. We do not think the legislature intended such a result. The school district's interpretation is contrary to the clear language of the statute, and resulted in Berger losing his job.

Seniority is a very fundamental issue in determining employees', as well as employers', rights in a school district. Minn.Stat. § 125.60 is intended to have and should have predictability for the school districts, for the teachers on leave, for the teachers who remain in the employ of the district, and for the exclusive representatives who may be called upon to participate in the construction of that statute. The statute clearly establishes a five-year maximum extended leave of absence.

█ In addition to the extended leave of absence under Minn.Stat. § 125.60, subd. 3, Chopp was granted a one-year general leave for the 1982–83 school year pursuant to subdivision 6 of that statute which provides:

> Nothing within the provisions of this section shall be construed to limit the authority of a school board to grant any teacher a leave of absence *which is not*

---

1. Even if Chopp had given notice prior to February 1, 1983, pursuant to Minn.Stat. § 125.60, subd. 3, that he would be returning to teaching in the fall of 1983, his seniority rights would not have been preserved. A gap under Minn.Stat. § 125.60 occurred as of March 28, 1983.

374

*subject to the provisions of this section and Section 354.094 and 354A.091.*
Minn.Stat. § 125.60, subd. 6 (1982) (emphasis added).

While it is the school board's prerogative to grant general leaves pursuant to subdivision 6, such leaves are not subject to the provisions of the Teacher Mobility Statute. A teacher on general leave does not retain seniority rights as a teacher on extended leave would. Minn.Stat. § 125.60, subd. 4 (1982). We are not unmindful that Chopp may have relied on the school board's grant of the additional leave. However, we cannot permit Chopp to benefit from that reliance when such would result in Berger's detriment.

## DECISION

Dennis Berger's challenge to seniority ranking was properly raised at his unrequested leave of absence hearing.

Inasmuch as Robert Chopp exceeded the five-year maximum extended leave of absence available to him under Minn.Stat. § 125.60, subd. 2, his seniority was less than Dennis Berger's on January 23, 1984. Berger was improperly placed on unrequested leave of absence and must be appropriately reinstated to a position for which he is licensed.

Reversed.