**Wesley URDAHL, Relator,**

v.

**INDEPENDENT SCHOOL DISTRICT
NO. 181, Respondent.**

No. C7–86–1045.

Court of Appeals of Minnesota.

Nov. 18, 1986.

Stephen R. Van Drake, Van Drake & Van Drake, Ltd., Brainerd, for relator.

Thomas Fitzpatrick, Fitzpatrick, Larson & Fitzpatrick, Brainerd, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Relator challenges his placement on unrequested leave of absence claiming he is senior to another teacher retained to instruct the same subject matter. We affirm.

## FACTS

Jerome Peltier began teaching landscape technology at the Brainerd Area Vocational Technical Institute (BAVTI) during the 1971–72 school year. Relator Wesley Urdahl began teaching the same subject matter at BAVTI in 1973–74. On August 10, 1981, Peltier was granted a five-year ex-

tended leave of absence through the 1985–86 school year. In December 1985, he wrote the school district informing them of his intent to return to teaching in fall 1986.

In January 1986, respondent Board of Independent School District No. 181 determined a reduction in student enrollment and financial limitations required a discontinuance of certain faculty positions. On February 10, 1986, the school board proposed placement of both Peltier and Urdahl on unrequested leave with 'the intent of actually placing only one on unrequested leave. Their consolidated unrequested leave hearing was held on March 26, 1986, where both Urdahl and respondent argued that of the two teachers Urdahl should be retained as most senior.

The hearing examiner issued his recommendation on April 16, 1986 concluding Urdahl was less senior than Peltier who should be retained. On May 20, 1986, respondent adopted the hearing examiner's recommendation and placed Urdahl on unrequested leave. On June 23, 1986, this court issued a writ of certiorari to review Urdahl's claims.

## ISSUE

Did respondent properly credit Peltier with one year of seniority for each year he was on extended leave?

## ANALYSIS

Court review of a school board's decision to place teachers on unrequested leave of absence is limited. *Kroll v. Independent School District No. 593*, 304 N.W.2d 338 (Minn.1981). The board's decision will be overturned only if it is "fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or based on an erroneous theory of law." *Whaley v. Anoka-Hennepin Ind. School District No. 11*, 325 N.W.2d 128, 130 (Minn.1982). *Berger v. Independent School District No. 706*, 362 N.W.2d 369, 371 (Minn.Ct.App. 1985).

Relator claims respondent improperly granted Peltier seniority credit while on extended leave pursuant to Minn.Stat. § 125.60, subd. 4 (1984). He asserts the terms of the district's negotiated plan and practice of not crediting teachers on extended leave with seniority are controlling and therefore Urdahl is the more senior by two years and should be reinstated.

The teachers' bargaining unit and the school district negotiated an unrequested leave of absence plan pursuant to Minn. Stat. § 125.12, subd. 6a in 1974. That plan states:

"Seniority" means full-time, continuing contract qualified teachers commencing with the first day of actual service in the School District and shall exclude teachers who spend less than fifty percent (50%) of a school year in an authorized military, or other similar leaves of absence. The first day of actual service in the district must be in a position for which proper licensure was held. No teacher with two years of service or less in the school district shall be eligible for the seniority list.

Brainerd Federation of Teachers Master Contract, art. VII, § 2, subd. 4(A). It also provides:

Each year * * * the School Board and exclusive representative shall cause such seniority list to be updated as provided in this section to reflect any change of certification or qualification, addition or deletion of personnel caused by retirement, death, resignation, other cessation of services, or addition of new employees.

*Id.* § 4, subd. 3. These provisions were interpreted by the district superintendent as excluding teachers from seniority credit while on extended leave. Three teachers other than Peltier have taken five-year extended leaves without receiving seniority credit, two beginning in 1978–79 and one in 1980–81.

In 1977, the Minnesota Legislature passed the teacher mobility incentives act including the extended leaves of absence statute. *See* 1977 Minn.Laws ch. 447, art.

9, § 1 (codified at Minn.Stat. § 125.60). That statute states:

> Any teacher who is reinstated to a teaching position after an extended leave of absence pursuant to this section *shall retain seniority* and continuing contract rights in the employing district as though he had been teaching in the district during the period when he was on the extended leave; provided, however, this subdivision shall not be construed to require a board to reinstate a teacher to any particular position or to include the years spent on the extended leave of absence in the determination of a teacher's salary upon his return to teaching in this district.

Minn.Stat. § 125.60, subd. 4 (Supp.1985) (emphasis added).

The district and the teacher's exclusive representative renegotiated the master agreement four times after 1977, but no proposal was ever made to modify the contract in response to the 1977 legislation. The master contract for all times relevant has stated:

> If any provision of this contract or any application of the contract to any employee or group of employees shall be found contrary to law, then such provision application shall not be deemed valid except to the extent permitted by law, but all other provisions or applications shall continue in full force and effect.

Brainerd Federation of Teachers Master Contract, art. XVIII, § 4.

■ A threshold question is whether Peltier was estopped from challenging the seniority list at the unrequested leave hearing. Although relator does not precisely state so, he appears to be arguing Peltier should have followed the grievance procedure provided in the negotiated plan for challenging the seniority list, instead of doing so at the unrequested leave hearing.

Peltier did not have contact with the school district during his extended leave with the exception of his December 1985 letter expressing his intent to return. He was unfamiliar with all seniority lists posted during that time because none of the lists were mailed to Peltier by BAVTI and he never requested any information.

The Minnesota Supreme Court recently held a teacher who failed to challenge a seniority list under the terms of the master agreement was precluded from making seniority arguments at the unrequested leave hearing. *See Blank v. Independent School District No. 16*, 393 N.W.2d 648 (Minn.1986) (teacher claimed she was licensed and had successfully taught more subject matter categories than she was given credit for on the final seniority list); *see also Ellerbrock v. Board of Education*, 269 N.W.2d 858, 862–63 (Minn.1978) (teacher failed to use detailed grievance procedure to challenge school district's failure to grant her seniority credit for maternity leave pursuant to amended master agreement).

But here Peltier was not challenging the proper application of a contract term but was asserting the statute controls. In a similar case, this court stated:

> Finally, we note that Berger's entire claim deals solely with the school board's interpretation of Minn.Stat. § 125.60 (1982 and Supp.1983), the Teacher Mobility Incentives Statute. It has no basis within the teachers' collective bargaining contract.

*Berger*, 362 N.W.2d at 372–73 (holding teacher was not required to raise seniority challenge by initiating grievance procedures). Because Peltier's claim involved questions of law not subject to the grievance procedure provided by the negotiated plan, we conclude Peltier was not estopped by failure to grieve.

The issue thus becomes whether the master agreement could deviate from statutory provisions regarding seniority credit for teachers on extended leave. At the time the involved plan was negotiated, the only statute referring to requested leave was Minn.Stat. § 125.18 regarding sabbatical leaves. Pursuant to that statute and a 1975 Minnesota Attorney General opinion, teachers on extended leave were properly credited with one year of seniority for each

year on requested leave. *See* Minn.Stat. § 125.18, subd. 3 (teachers "shall retain all rights in the employing district as though teaching in that district"); Op.Minn.Atty. Gen. No. 172–d (1975), *found in* 8 Minn.Legal Register 52 (1975) (questions 7–8). Subsequently, section 125.60 was enacted which also provides for seniority credit.

Where a statute and the terms or interpretation of a collective bargaining agreement are in conflict, the statute controls. *See Jerviss v. Independent School District No. 294,* 273 N.W.2d 638, 644 (Minn.1978). Here the teacher mobility incentives act presents strong public policy in favor of encouraging teachers to pursue additional education and other development. *See Berger,* 362 N.W.2d at 373. In such a case, the statute providing seniority credit while on extended leave controls. A negotiated plan cannot modify the provisions of Minn.Stat. § 125.60. The parties' master contract should have been modified after 1977 to reflect the statutory amendment and provide seniority credit to teachers on extended leave.

Relator also claims superficially an equal protection violation. While the grounds for that claim are not stated, if the assertion is relator should have been able to rely on the final seniority list despite its contrariness to law, his claim is without merit. *See Berger,* 362 N.W.2d at 374.

## DECISION

The Brainerd School Board properly placed appellant on unrequested leave of absence.

Affirmed.