In Re the **PROPOSED TERMINATION OF JAMES E. JOHNSON'S TEACHING CONTRACT WITH INDEPENDENT SCHOOL DISTRICT NUMBER 709.**

No. C8–89–1439.

Court of Appeals of Minnesota.

Feb. 13, 1990.
Review Denied April 13, 1990.

Roger A. Peterson, Scott A. Higbee, Peterson, Engberg & Peterson, Minneapolis, for relator Johnson.

Elizabeth A. Storaasli, Bye, Boyd & Agnew, Duluth, for respondent Independent School Dist. No. 709.

Considered and decided by KALITOWSKI, P.J., and HUSPENI and GARDEBRING, JJ.

## OPINION

GARDEBRING, Judge.

The school board passed a resolution terminating the employment of James Johnson, a tenured teacher, based upon the independent hearing examiner's findings of inefficiency in teaching and insubordination. Johnson appeals, contesting the sufficiency of the evidence to terminate his employment and the propriety of the procedures followed by the school in conducting its investigation. We affirm.

## FACTS

Prior to his termination, relator James Johnson was a tenured mathematics teacher employed by respondent Independent School District No. 709 (Duluth) since 1967. He taught seventh and ninth grade math at several schools within the school district. Beginning in 1970, he received intermittent performance evaluations, both formal and informal, some negative and some rating his teaching ability as satisfactory or better. In general, the evaluations noted four areas of concern: excessive failure rates, high volume of transfer requests, poor relationships with students and parents, and inappropriate teaching methods. In some instances, specific instructions were provided to Johnson as to required changes in classroom practice and teaching methodology.

On September 17, 1987, Johnson received a letter from Richard Wallin, Director of Secondary Education, outlining various directions Johnson must follow to improve

his teaching performance. Another letter followed on October 26, 1987, summarizing the district's concerns and providing specific examples of misconduct or of suggestions to improve in each area. On November 30, 1987, Wallin notified Johnson of his intent to recommend termination of employment and the grounds therefor. Johnson returned a written response.

On January 13, 1988, Johnson was charged with inefficiency in teaching, conduct unbecoming a teacher, and insubordination, and was suspended without pay, effective immediately. The charges outlined the following deficiencies: (1) poor rapport with students; (2) insufficient communications with parents; (3) lack of student progress; (4) inappropriate use of class time; and (5) failure to follow the school's adopted mathematics curriculum. A hearing was conducted before an independent hearing examiner, a retired district court judge. The hearing lasted 29 days over a seven-week period in September and October 1988. On May 11, 1989, the hearing examiner issued his findings and concluded that while there were insufficient grounds for terminating on the basis of conduct unbecoming a teacher, there was substantial evidence to recommend termination for insubordination and inefficiency in teaching. On May 31, 1989, the school board adopted the examiner's recommendations and immediately terminated Johnson's employment.

## ISSUE

Is the school board's decision to terminate Johnson supported by substantial evidence?

## ANALYSIS

█ A school board's decision to terminate a teacher will not be set aside on appeal unless the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction or is based on an erroneous theory of law. *Ganyo v. Independent School District No. 832*, 311 N.W.2d 497, 500 (Minn.1981). Johnson appeals the school board's decision citing lack of substantial evidence to terminate. The standard of review is narrow. *Whaley v. Anoka–Hennepin Independent School District No. 11*, 325 N.W.2d 128, 130 (Minn.1982). We must view the record in its entirety to determine whether the board's findings are supported by relevant evidence which a reasonable mind might accept as adequate to support the conclusion that Johnson was insubordinate and inefficient in his teaching methods. *Id.*

This matter was extensively heard by the hearing examiner. Eighty-three witnesses were called and 157 exhibits were received in evidence. The transcript of the proceedings consists of 29 volumes containing 6455 pages. The hearing examiner had ample opportunity to weigh the evidence and the credibility of the witnesses. He made detailed findings and concluded there were sufficient grounds for recommending termination. The school board considered the hearing examiner's findings and recommendation, and heard arguments by the school district and Johnson before deciding to terminate Johnson's employment.

Inefficiency in teaching and insubordination are two independent statutory grounds for termination. Minn.Stat. § 125.17, subd. 4(1), (3) (1988). Although there is evidence in the record from which conflicting inferences may be drawn with regard to each deficiency, the critical inquiry is whether the inferences drawn by the school board in the course of their decision to terminate Johnson are supported by substantial evidence in the record considered as a whole. *Whaley*, 325 N.W.2d at 131. We find that there is substantial evidence in the record to support the school board's decision to terminate Johnson's employment.

### Inefficiency in Teaching

█ Evidence in the record demonstrates Johnson's poor rapport with students and insufficient communication with parents. The administration received numerous complaints from students and parents wherein the students describe feelings of frustration and confusion regarding Johnson's teaching methods and class assignments.

Many of these complaints were accompanied by requests for transfer out of Johnson's class. Administrators observing Johnson's classes between 1977 and 1988 repeatedly noted the poor communication between Johnson and his students.

The record also contains evidence substantiating the charge of lack of student progress. Even judged by his own techniques, the evidence supports the finding that Johnson's students were not progressing satisfactorily. Although the test scores of highly motivated students improved, the scores of the other students remained the same or worsened. Many students failed his examinations. Testimony by the math teacher who took over Johnson's class after his suspension reveals that Johnson's students were behind in the curriculum. While evidence of requests by students and parents for transfer out of Johnson's classes are not indicative of poor teaching, it demonstrates a pattern of dissatisfaction with Johnson's teaching methods which is a proper area of concern for the school board to address.

■ Furthermore, the district's attention to Johnson's grading practices and failure rates was appropriate, and evidence on these issues supports the finding of teaching inefficiency. While Johnson has argued that he should not be evaluated on the attitudes of his students and their unwillingness to learn, evidence on grades, and in particular the large number of student failures, provides evidence of Johnson's inability to teach the mandated curriculum.

Although the assignment of a grade may be entitled to first amendment protection, academic freedom is not absolute. *See Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989); *Mailloux v. Kiley*, 323 F.Supp. 1387, 1391 (D.Mass.1971), *aff'd*, 448 F.2d 1242 (1st Cir.1971). Johnson was responsible for transmitting basic information to secondary school students. The district adopted a specific curriculum for achieving this objective. Johnson was terminated due to an inability to impart this basic knowledge, not because of the specific grades he assigned. We find no grounds to support Johnson's claim that his right to academic freedom was violated.

■ We note, however, that the school district's September 1987 directive to Johnson that his grade distribution not deviate by more than two percent from distributions in other similar classes was inappropriate. Such a rigid, numerical grading standard appears to us to potentially interfere with a teacher's legitimate need for classroom flexibility. School districts are cautioned in this area.

In reviewing the entire record, we conclude there is substantial evidence supporting the finding that Johnson was inefficient in teaching.

### Insubordination

■ Insubordination is a "constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." *Ray v. Minneapolis Board of Education, Special School District No. 1*, 295 Minn. 13, 17, 202 N.W.2d 375, 378 (1972) (quoting *Shockley v. Board of Education, Laurel Special School District*, 51 Del. 537, 541, 149 A.2d 331, 334, *rev'd on other grounds*, 52 Del. 237, 155 A.2d 323 (1959)). Johnson was specifically directed by Wallin and school principals to improve his relationship and rapport with students and parents. He was ordered to provide worksheets containing the assigned problems instead of having the students copy the problems off the blackboard. He was also directed to furnish each student with copies of tests and any material used to supplement the textbook.

In light of the numerous complaints received by the administrators, these orders are reasonable. Although Johnson participated in several teaching workshops, he continually refused to change his instructional methods. The record contains substantial evidence to support the finding of insubordination.

### Propriety of Procedures

Johnson claims that the school board failed to follow proper procedures in con-

ducting the termination hearing. He contends he was denied remediation, due process, and adequate notice of charges. Furthermore, he argues that the board violated the Minnesota Data Practices Act and wrongfully assessed hearing costs against him.

 Johnson's contention that he was denied remediation is without merit. The opportunity for remediation is not required in Duluth, a city of the first class. *See* Minn.Stat. §§ 125.12, subd. 13, and 125.17 (1988). Similarly, we find Johnson's claim that he was denied due process unsupported by the record. The hearing examiner conducted an extensive hearing and made detailed findings. There is no evidence that school board members were predisposed to terminating Johnson's employment. Furthermore, statements made by counsel at the school board meeting regarding arguments by counsel and Johnson not constituting evidence were accurate and, as such, cannot be found to violate due process.

We find that the charges, consisting of three pages outlining the specific allegations, were sufficiently definite to permit Johnson to prepare a proper defense. They clearly fall within the provisions of Minn.Stat. § 125.17, subd. 5 (1988) (charges must be in writing and signed).

The record is void of evidence substantiating Johnson's contention that the school district violated the Minnesota Data Practices Act. Minn.Stat. § 13.43 (1988). The complaints filed against Johnson are public information. Minn.Stat. § 13.43, subd. 2 (1988). There is no evidence that parents were notified of the district's intent to terminate Johnson prior to the charges being filed.

Unlike *Rankin v. Independent School District No. I-3*, 876 F.2d 838 (10th Cir.1989), wherein due process was violated by requiring teachers to pay one-half the cost of a termination hearing, Johnson was required to pay expenses incurred to secure data on grades his students received in mathematics and in other classes over the previous five years. These expenses were charged to Johnson because his request for these documents was untimely; the request was made during the fourth week of the hearing. The timing of this request was entirely within Johnson's control. He was not required to pay any costs of the termination hearing itself.

As to Johnson's remaining contentions, we find them to be not supported on the record.

### DECISION

Based upon the entire record, we find there is substantial evidence to support the school board's decision to terminate Johnson's employment.

Affirmed.