In the Matter of the Placement of William JOHNSON on Unrequested Leave of Absence.

No. C6–91–1603.

Court of Appeals of Minnesota.

March 10, 1992.

Review Granted in Part May 15, 1992.

Harley M. Ogata, Christina L. Clark, Roger L. Barrett, Minnesota Educ. Ass'n, St. Paul, for relator.

John M. Roszak, Ann R. Goering, Ratwik, Roszak, Bergstrom & Maloney, P.A., Minneapolis, for respondent.

Considered and decided by FORSBERG, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

DAVIES, Judge.

William Johnson, a teacher on unrequested leave of absence, asked reinstatement for the 1991–92 school year. The school district denied him reinstatement to a position that was being vacated, based on its determination that May 30, the last work day of the school year, constituted the "close of the school year," that his right to reinstatement ended that day, and that no position was then available. We reverse and remand.

## FACTS

Relator William Johnson, an industrial arts teacher on unrequested leave of absence (ULA) from School District No. 199 in Inver Grove Heights, is seeking reinstatement. The notice of his placement on ULA for five years stated it was "effective at the end of the 1985–86 school year on May 30, 1986." The dispute is whether the "end of the school year" in 1986 more accurately was June 30, the end of the

contract year, rather than May 30, the last work day for the school year.

This has become relevant because Jesse F. Roberts resigned from an industrial arts position effective June 1991. This resignation was accepted by the school board at its February 4, 1991, meeting. By letter date stamped April 8, 1991, Johnson requested reinstatement to the industrial arts position being vacated by Roberts.

Another teacher, J. Randy Iverson, had more seniority than Johnson and was tendered the industrial arts position at the May 21, 1991, board meeting. Iverson did not fill the position, however, because on March 1, 1991, he had requested a five-year voluntary leave of absence from an administrative position, which request was granted by the school board on March 4, 1991.[1]

On July 8, 1991, the district issued a notice of vacancy, seeking a long-term substitute for the industrial arts position. Appointment of a new teacher to that long-term substitute position was approved by the board on August 19, 1991. It is not clear when Johnson received notice that Iverson would not be filling the position.

Johnson challenges the district's actions in not reinstating him to the industrial arts position vacated by Roberts (and Iverson), which was subsequently filled by a long-term substitute.

### ISSUE

1. Did the district err in denying Johnson reinstatement to the industrial arts position for 1991–92?

2. Was the writ of certiorari filed within 60 days of notice of an appropriate proceeding?

### ANALYSIS

A school board's decision to terminate a teacher or principal should be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law.

1. It is not relevant to Johnson's case that at the May 21, 1991, board meeting Iverson also was

*Liffrig v. Independent Sch. Dist. No. 442,* 292 N.W.2d 726, 729 (Minn.1980).

■ a. Johnson argues that he had a right to reinstatement until June 30, 1991, the date a teacher's annual contract expires (and five years after June 30, 1986); and that he should have been reinstated in the industrial arts position vacated by Roberts and Iverson.

Minn.Stat. § 125.12, subd. 6b (1984), states that an "unrequested leave shall be effective at the close of the school year." This court previously dealt with the appropriate meaning of "close of the school year" in *Volz v. Independent Sch. Dist. No. 858,* No. C9–89–1479, 1990 WL 45 (Minn.App. Jan. 2, 1990), an unpublished opinion cited by both parties. In *Volz,* this court held that the phrase "close of the school year," as used in Minn.Stat. § 125.-12, subd. 6 (1988), "means the annual expiration date for the teacher's contract, namely June 30." *Volz* at 4.

Article XV, Section 3, Subd. 1, of the agreement between the district and the teachers states that:

Such [unrequested] leave shall be effective no later than the close of the school year or at such earlier time as mutually agreed between the teacher and the School Board.

Further, in Section 4, Subd. 1, regarding reinstatement, the contract states that:

No new teacher shall be employed by the School District while any qualified teacher is on unrequested leave of absence in the same field and subject matter. * * * Reinstatement rights apply to long term substitute positions known in advance to be for thirty or more working days.

Superintendent Phillip N. Moye informed Johnson by letter, dated May 2, 1991, that because of the last actual work day of the person retiring, there would be no position available to which Johnson would have reinstatement rights. To support this argument, the district relies on *Berger v. Independent Sch. Dist. No. 706,* 362 N.W.2d 369 (Minn.App.1985). In *Berger,* a teacher

placed on ULA from an administrative assistant position, which had been eliminated.

was granted a *voluntary* leave effective from March 28, 1978, to March 28, 1983. *Id.* at 373. The teacher requested reinstatement for the 1984–85 school year. This court held that:

> Minn.Stat. § 125.60, subd. 2 (Supp. 1983), is quite clear in providing that no extended leave may exceed five years:
>
>> The maximum duration of an extended leave of absence pursuant to this section *shall be determined by mutual agreement of the board and the teacher* at the time the leave is granted and shall be at least three but not more than five years.

*Id.* (emphasis added). Minn.Stat. § 125.60, subd. 2, relates to voluntary leave and in *Berger*, the leave was voluntary; thus, the teacher had agreed to a mid-year leave date that left a gap between the end of his protected leave and the end of a school year. He lost his seniority on March 28 of the fifth year and was not entitled thereafter to reinstatement for a subsequent school year. *Id.* at 373–74.

Here, in contrast, there is an *unrequested* leave of absence pursuant to Minn.Stat. § 125.12, subd. 6b, and there is no evidence that Johnson actually agreed to a leave date prior to the close of the school year, the date provided by that statute. Thus, his right to reinstatement continued until June 30, and on that date a vacancy existed to which Johnson had a reinstatement right.

■ b. The next issue is the timeliness of the petition. A writ of certiorari must be issued within 60 days of notice of the proceedings to be reviewed. Minn.Stat. § 606.01 (1990). The point from which one counts the 60 days to appeal in this case turns on a determination of when the teacher, with notice, was aggrieved by the proceedings of the district. Because we determine that Johnson could not have been aggrieved before the close of the school year and that the "close of the school year" is June 30, this petition is timely.[2]

**2.** The incorrect notice in 1986 did not aggrieve Johnson; to compel immediate review in such

## DECISION

The "close of the school year" in a case of ULA is the date the teacher's annual contract expires, here June 30, and the right to reinstatement continues to that date. A writ of certiorari filed within 60 days of that date is timely. We reverse and remand for Johnson's reinstatement with back pay.

Reversed and remanded.

circumstances would violate principles of ripeness and waste judicial resources.