Donald E. GRINOLDS, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 597, ERSKINE, Mn, Respondent.

No. C7–83–382.

Supreme Court of Minnesota.

March 23, 1984.

Rehearing Denied April 17, 1984.

Douglas L. Skor, St. Paul, for appellant.

Lee E. Wall, Crookston, for respondent.

Roger J. Aronson, Minneapolis, for the MN Ass'n of Secondary School Principals.

TODD, Justice.

Donald E. Grinolds was relieved of his duties as superintendent of schools for Independent School District No. 597 and replaced by a half-time superintendent. Grinolds was assigned teaching duties at reduced salary and benefits. His request for a hearing under Minn.Stat. § 125.12, subd. 9 (1982) was denied. The parties stipulated to resolve the matter in district court, but Grinolds reserved all of his rights. The district court affirmed the actions of the school district. We reverse.

Grinolds, as superintendent, received a salary of $30,000 and an additional $2,000 for also acting as an elementary principal. He also received many fringe benefits including various forms of insurance, an extra medical allowance and special per diem. In the spring of 1982, the school decided to place appellant on unrequested leave of absence and discontinue the superintendent's position. On April 20, 1982, a resolution was adopted by the school board to discontinue the position at the end of the 1981–82 school year, pursuant to Minn.Stat. § 125.12, subd. 6b, "because of financial limitations imposed upon the district based upon a reduction of pupils."

On May 24, 1982, the school board cancelled its proposed discontinuance of the position of superintendent. The school board by motion withdrew its proposed discontinuance on the following conditions: "That the said Donald E. Grinolds be assigned to a teaching role as a business education instructor for the full 1982–1983 contract year; that the compensation of said Donald E. Grinolds be at the scheduled rate for said business education teacher and that the said Donald E. Grinolds in accepting said assignment and compensation retain such legal remedies as he may

otherwise have relative to a challenge of said assignment and compensation." Grinolds objected to his contract termination since the school board had not followed the statutory scheme for termination mandated by Minn.Stat. § 125.12, subds. 6a, 6b (1982). The reassignment placed him as a business education teacher at a salary of $23,050. He also pays an additional $2,000 of his own money to maintain insurance and other benefits he received as a superintendent.

The trial court also found that at approximately the same time the school board reassigned the superintendent, it also proposed that a principal be placed on unrequested leave of absence as an additional administrative cost saving measure. This finding was ostensibly made to support the school board's argument that reassigning the superintendent was financially necessary.

The school board in August of 1982 entered into a joint powers agreement under Minn.Stat. § 122.541 (1982) with an adjacent school district. Under this agreement the school district obtained the services of a superintendent upon a half-time basis.

Grinolds continually objected to the manner in which he was "reassigned." Eventually, on August 4, 1982, Grinolds and the school board entered into a stipulation that read much like the language of the motion adopted by the school board on May 24, 1982. The stipulation specifically stated that Grinolds did not waive any rights he may have to receive back pay and back fringe benefits for 1982–83 should a challenge be successful. The parties then went to district court for what was essentially, although not pleaded as such, a declaratory judgment. The district court was to determine whether Minn.Stat. § 123.34, as it related to § 125.12, relieved the school district from affording a superintendent a hearing under § 125.12 when the employment contract was terminated.

The school district also introduced evidence at trial demonstrating that even if the school board had given Grinolds a hearing, the school board could have shown

that it was financially necessary to terminate his position as required under Minn. Stat. § 125.12. Grinolds objected at trial to the introduction of that evidence. He argued that the issue was limited to whether § 123.34 gave the school board authority to terminate his contract without a hearing.

When the trial court issued its Findings of Fact, Conclusions of Law, Order for Judgment and Memorandum on February 3, 1983, it was apparent that it had taken into consideration financial matters and other evidence. The trial court found that the school board, pursuant to Minn.Stat. § 123.34, had the inherent managerial authority to terminate a superintendent's contract notwithstanding the language of Minn.Stat. § 125.12. The trial court conceded that a superintendent is protected by the hearing procedures of § 125.12, but held that this "reassignment" is a situation not covered by § 125.12. The trial court likened the reassignment to a demotion under the teacher tenure law, Minn.Stat. § 125.17 (1982). Since the continuing contract law does not have a similar provision, the trial court believed the legislature left demotions, reassignments and restructuring of the superintendency to the school board's discretion. It held:

It therefore follows that a school board should be permitted to *restructure* the office of superintendent in such fashion most advantageous to the interests of its district. It may not terminate a superintendent except pursuant to Minn.Stat. 125.12, subd. 4. It may not place a superintendent on unrequested leave of absence except pursuant to Minn.Stat. 125.-12, subd. 6(b). It may, however, *restructure* the office to provide for the sharing of the office with another school district, and if, in the process, reassignment of the present superintendent is required it need not subject its management decision to the provisions of Minn.Stat. § 125.12 (emphasis added).

The trial court apparently made alternative findings in addition to the above holding to support the school board's termination. The trial court also found that even if Minn.Stat. § 125.12 were applicable, its decision was supported by the evidence produced by respondent at trial. Respondent produced the findings, conclusions and recommendations of a hearing officer in the dismissal of another teacher to justify its determination that it was financially necessary to terminate the superintendent's contract. The trial court found that the school board's decision to terminate the superintendent's contract was not arbitrary, capricious or unreasonable. It reasoned as follows:

The school district's final audit report for fiscal year ending June 30, 1981, revealed an operating fund balance of $829. The projection for year ending June 30, 1982, indicated possible revenue exceeding expenditures by approximately $13,943. The budget prepared and proposed for 1982–1983 revealed projected revenues in excess of expenditures in the operating fund of $2,431. Defendant school district obviously had to reduce expenditures. The fact that they did so by cutting administrative costs rather than classroom teachers is well within their discretionary authority in the management of the school system.

These findings of financial necessity purportedly support the school board's decision even if a hearing under Minn.Stat. § 125.12 was required.

The issues on appeal are:

1. Is a superintendent of schools entitled to a hearing upon termination of his position?

2. May parties by stipulation confer "de novo" jurisdiction on the district court so that it may consider the merits of school board actions affecting a tenured superintendent of schools?

3. If the district court has jurisdiction, may it consider evidence of the financial condition of the school district which was produced in proceedings involving different school district employees?

■ 1. Minn.Stat. § 125.12, subd. 1, governing termination of teacher contracts,

includes a superintendent in its definition of teachers. It provides:

> *Teacher defined.* A superintendent, principal, supervisor, and classroom teacher and any other professional employee required to hold a license from the state department shall be deemed to be a "teacher" within the meaning of this section.

Minn.Stat. § 125.12 requires that a hearing be held prior to placing a "teacher" on unrequested leave. The school board commenced such proceedings but abandoned them on the theory that under Minn.Stat. § 123.34 the discontinuance of a full-time superintendent position was a managerial decision outside the scope of the hearing requirements of the statute. Minn.Stat. § 123.34, subd. 9 provides:

> All districts maintaining a classified secondary school shall employ a superintendent who shall be ex officio a member of the school board but not entitled to vote therein. The authority for selection and employment of a superintendent shall be vested in the school board. Notwithstanding the provisions of section 125.12, subdivision 6a or 6b, no individual shall have a right to employment as a superintendent based on seniority or order of employment in the district.

From this statute the school district contends that it is within the inherent managerial power of the school board to determine the organizational structure of the district. It believes that since Grinolds is a tenured teacher, it need treat him as a tenured teacher only for purposes of seniority. In accord with that belief, it allowed him to bump a less senior business education teacher from that position at the remuneration he is entitled to for that position with his level of seniority.

■ The legislative history behind the enactment of section 123.34, subd. 9 (1982) delineates what the amendment was supposed to accomplish. Section 123.34 was not enacted to tamper in any way with the tenure or continuing contract laws. Section 123.34 simply attempted to remove the superintendent's position from the seniority laws so that a more senior principal or administrative person, licensed to be a superintendent, could not "bump" a superintendent from his or her position when that principal or administrative person was placed on unrequested leave of absence from his or her job. Section 123.34 eradicates that practice by making it clear that school boards may *hire* who they wish since they must work so closely with the superintendent. Section 123.34 does not remove a superintendent's position from the continuing contract laws. When a school board terminates a superintendent's contract it must comply with section 125.-12. Therefore, the references in section 123.34 to section 125.12 are of limited effect and application. It applies only to hiring and seniority, not to removal of superintendents.

■ The school board had the right to change the job description to half-time. When Grinolds demanded a hearing, however, it was required to establish the reasons for such redefinition within the statutory provisions relative thereto. Since Grinolds was not afforded a hearing, there can be no termination of his status as full-time superintendent of schools. Grinolds was entitled to a hearing under Minn.Stat. § 125.12. The school board denied him this right. We are compelled to reverse.

■ 2. The parties' stipulation is ineffective. It essentially seeks to confer "de novo" jurisdiction on the district court. The district court has only appellate jurisdiction. Teacher dismissals have historically been afforded only appellate review by writ of certiorari to the district court. *See* 8 Wm. Mitchell L.Rev. 265, 268 n. 16 (1982). The rule originated in *State ex rel. Ging v. Board of Education,* 213 Minn. 550, 7 N.W.2d 544 (1942), *overruled in part on other grounds by Foesch v. Independent School Dist. No. 646,* 300 Minn. 478, 223 N.W.2d 371 (1974), and is still used today. *See Kroll v. Independent School Dist. No. 593,* 304 N.W.2d 338, 342 (Minn.1981). The court in *Ging* stated:

Complete jurisdiction cannot, either directly or indirectly, be conferred upon the courts [to make the administrative, and therefore executive decisions of a school board] in view of the constitutional division of the powers of government. * * * [Y]et a limited jurisdiction by way of certiorari, and in some cases by statutory appeal, is conferred upon the courts. This is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it. A court cannot put itself in the place of the board, try the matter de novo, and substitute its findings for those of the board.

*Ging* at 570–71, 7 N.W.2d at 556. *See also Whaley v. Anoka-Hennepin Indep. School Dist. No. 11*, 325 N.W.2d 128, 130 (Minn. 1982); *Liffrig v. Independent School Dist. No. 442*, 292 N.W.2d 726, 729 (Minn.1980); *State ex rel. Lucas v. Board of Educ.*, 277 N.W.2d 524, 526 (Minn.1979).

This court has restated this proposition that it is not for the trial court to make findings of fact in the first instance as a de novo review:

[M]aking findings of fact is the obligation of the administrative body and is not a function to be performed by the court in the first instance. We must first know what the decision means before we undertake the task of attempting to winnow the wheat from the chaff to find out if the conclusions of the administrative body are without support in the evidence and examine whether its action is right or wrong.

*Morey v. School Board of Indep. School Dist. No. 492*, 271 Minn. 445, 450, 136 N.W.2d 105, 108 (1965).

 The trial court in the case presently on review was not at "liberty to hear the case de novo and substitute its findings for those of the school board." *Kroll*, 304 N.W.2d at 342. Our precedent of *Ging* and its progeny clearly establish that trial courts have only appellate jurisdiction to review teacher dismissals, not de novo review. *See also, Western Area Business, Etc. v. Duluth, etc.*, 324 N.W.2d 361, 365 (Minn.1982) (in undertaking review of school board decision, trial court must not put itself in place of the board, try the matter de novo and substitute its findings for those of the board).

Appellate review is limited to the record. The only record before the district court was the stipulation. There are no facts stated therein which would permit approval of the action of the school board in terminating Grinolds' position of full-time superintendent.

3. Having disposed of the matter we need not consider the appropriateness of evidence introduced from other termination proceedings.

Reversed and remanded for further proceedings consistent with this opinion and the appropriate statutory procedures.