**Christopher J. KELLY, Petitioner, Appellant,**

v.

**Pamela G. CATALDO, Respondent.**

No. C8–92–298.

Court of Appeals of Minnesota.

July 21, 1992.

Review Denied Sept. 15, 1992.

Kimary S. Knutson, Minneapolis, Walter F. Kelly, Sutton and Kelly, Milwaukee, Wis., for appellant.

D. Patrick McCullough, McCullough, Smith & Wright, St. Paul, for respondent.

Considered and decided by CRIPPEN, P.J., and SCHUMACHER and SHORT, JJ.

## OPINION

CRIPPEN, Judge.

Appellant seeks parental rights toward a child who was conceived and born while respondent, the child's mother, was married. Respondent's husband continues to live with respondent and another child of the marriage, and considers the child a family member and an important part of the family unit.[1] Appellant has been permitted only limited contact with the child since her birth. He contends he has standing as a presumptive parent under Minnesota law because his relationship is conclusively proved by existing genetic tests.[2]

---

1. These circumstances have not been addressed before by a Minnesota appellate court. The topic has been addressed by numerous other courts and in legal journals. Much of this discussion focuses on constitutional treatment of the issue by the United States Supreme Court in *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). *See* Mary K. Kisthardt, *Of Fatherhood, Families and Fantasy: The Legacy of Michael H. v. Gerald D.*, 65 Tul. L.Rev. 585 (1991) (containing a current and comprehensive review of literature and appellate decisions).

2. Minnesota enacted a version of the Uniform Parentage Act in 1980. 1980 Minn.Laws ch. 589, § 1 (codified as Minn.Stat. §§ 257.51—.74). The Act defines the man who is "presumed to be the biological father of a child." Minn.Stat. § 257.55, subd. 1 (1990). Various rules of standing to commence a parentage proceeding are shaped by the existence of a presumed father. Minn.Stat. § 257.57 (1990 & Supp.1991).

   Prior to 1989, Minn.Stat. § 257.55 contained five presumptions of fatherhood. Three dealt with relationships of the man with the child's biological mother. Minn.Stat. § 257.55, subds. 1(a), (b), (c). Two dealt with the man's relationship with the child. *Id.*, subds. 1(d) (man who "receives the child into his home and openly holds out the child as his biological child"), 1(e) (written and filed acknowledgement of paternity of the child by the man and the child's biological mother). The 1989 legislature added a sixth presumption of fatherhood:

   > Evidence of statistical probability of paternity based on blood testing establishes that the likelihood that the man is the father of the child, calculated with a prior probability of no more than 0.5 (50 percent), is 99 percent or greater.

   1989 Minn.Laws ch. 282, art. 2, § 161 (codified as Minn.Stat. § 257.55, subd. 1(f)). A presumed father, now including one defined in the preceding subsection, may bring an action at any time to declare the existence of a father and child relationship. Minn.Stat. § 257.57, subd. 2(1) (Supp.1991).

Appellant produced his affidavit to the trial court stating that genetic testing voluntarily done in December 1990 showed conclusively that he was the father of the child. He stated that in January 1991 both parties received the physician's oral report of this evidence. He obtained a subpoena for respondent's production of test result documents, aimed at getting respondent to sign releases necessary to obtain the records. Respondent refused to honor this subpoena as directed and at the dispositive motion hearing appellant asked the court to compel respondent's signature on a release for production of the test result records. The trial court refused to order disclosure of the report and instead granted respondent's motion to dismiss the case for lack of standing, holding that (1) appellant could not proceed any further premised on only his hearsay evidence of genetic test results reported to him by a physician, and (2) any presumption favoring appellant was nullified by the "greater" statutory presumption favoring the spouse of the child's mother.[3] We conclude the trial court must examine the competing statutory presumptions after first complying with a statutory mandate that the child be a party in the case.

### FACTS

#### a. Child, family

M.C. was born on May 13, 1991 in Minnesota. Her mother respondent Pamela Cataldo has been the wife of Michael Cataldo since 1979. Respondent and her husband continue to live together as a married couple. The couple are parents of another daughter born in November 1988.

#### b. Appellant

Christopher Kelly asserts that he had an intimate relationship with respondent during periods between June 1987 and February 1988, and again between Spring 1989 and September 1990. Appellant is a resident of Massachusetts. Evidently the Cataldo family lived in Massachusetts for some time before moving to Minnesota in 1991.

During the pregnancy preceding M.C.'s birth, appellant and respondent arranged through a Massachusetts obstetrician to complete testing on the parentage of the child. Appellant Kelly states that he was permitted to listen to the telephone report to respondent of the test results, and that the obstetrician reported a conclusive genetic finding that appellant was the father of the child. Appellant further states that the child's mother acknowledged his parentage in the course of mailings and telephone calls prior to July 1991.

Kelly was permitted three visitations with the child in Minnesota between May and July. In July 1991, respondent announced that she was cutting off appellant's contacts with the child. Appellant says the mother explained that she wanted her child to have a normal life. In his affidavits on the facts, appellant states his affection for the child and her mother and states the personal and economic resources he offers for the child.

---

**3.** The spouse of the child's biological mother is presumed to be the biological father of the child who is born during the marriage. Minn.Stat. § 257.55, subd. 1(a). Michael Cataldo evidently enjoys a further parentage presumption for one who has received the child into his home and openly held out the child as his biological child. Minn.Stat. § 257.55, subd. 1(d).

According to the parentage act, any presumption under section 257.55 "may be rebutted in an appropriate action only by clear and convincing evidence." Minn.Stat. § 257.55, subd. 2. Standing alone, this provision would call for evaluation of appellant's genetic test evidence as rebuttal of presumptions favoring Michael Cataldo. However, because the 1989 amendment of section 257.55 renders appellant's evidence a showing of his own presumption of parentage, his claim is assessed under a special provision of section 257.55 governing the effect of two or more presumptions of parentage which conflict with one another. See Minn.Stat. § 645.26, subd. 1 (1990) (heeding special rather than general provision of law). Under this special provision, if two or more presumptions of fatherhood conflict, the presumption which controls is that which "on the facts is founded on the weightier considerations of policy and logic." Minn.Stat. § 257.55, subd. 2. See Ex Parte Presse, 554 So.2d 406, 412, 424–431 (Ala.1989) (majority and Maddox, J., dissenting, employ "weightier considerations" standard in discussing presumption for husband of mother which is disputed by putative genetic father).

### c. Mother's spouse

In her affidavit, respondent denies that appellant Kelly is the father of M.C. and states that it would be better for her family and other families that proceedings like these not be allowed. Respondent states that her husband is the father of both children, M.C. and her sister. In his affidavit, Michael Cataldo states that he considers both children to be "my family members and the most important parts of our family unit."

Appellant Kelly states that respondent commented in the past about her unhappiness and her observation that her husband was "very busy and neglected her emotional need for companionship." Kelly reports comments of the mother in 1987 that her husband was aware of her sexual contacts with Kelly.

### d. Proceedings

Appellant initiated parentage proceedings on October 17, 1991. He asked the trial court to establish his joint legal and physical custodial relationship with M.C. He sought an initial, perhaps audacious, visitation arrangement "where [respondent Pamela Cataldo] personally provide transportation on [M.C.'s] behalf 2–3 days (non-overnight) twice a month and that whenever [M.C.] is in Boston, [he] have a reasonable opportunity to be with her."

On October 21, 1991, appellant issued the notice for a deposition of Pamela Cataldo. On the same date, he caused to be issued a subpoena duces tecum to command Cataldo's production of results from genetic testing that occurred in December 1990. He had also previously moved the trial court for an order compelling current parentage blood testing. Respondent Pamela Cataldo refused discovery on October 24 and on October 25, she gave notice of a motion for dismissal to be heard on November 7. Before this hearing, appellant submitted his affidavit to describe, *inter alia,* the physician's report that blood tests conclusively establish he is the father of M.C. At the hearing, appellant reported respondent's refusal of discovery and moved for a court order to compel her signing of a release for production of the genetic test records.

Following the hearing, the trial court dismissed the proceedings. The court acknowledged that genetic testing occurred on December 14, 1990, but dismissed the petition because the test results were "not before the court," not presently shown by "evidence in the record." The court added that "even if" blood tests created a presumption of appellant's parentage, his petition must be dismissed because of the greater presumption for Michael Cataldo, concluding that appellant had not properly shown his presumptive status and could not overcome the presumption that Michael Cataldo was the father of the child.

Appellant challenges dismissal of the case and also contends the trial court erred in failing to compel current blood tests. In addition, he reports to this court that he successfully recovered a written record of genetic testing done in December 1990 and that these tests demonstrate a .994167 probability that he is the father of M.C.

During the pendency of the case before the trial court, neither the court nor either party proposed that the child be included as a party in the case.

### ISSUE

Can a putative father's standing be determined in the circumstances of this case without joining the child as a party to the proceedings?

### ANALYSIS

■ Briefs and arguments of the parties have compelled careful examination of current statutory law on the standing of persons to initiate parentage proceedings. Thus, we observe the mandate of the Parentage Act on the party status of the child in a case like this. M.C. was not a party in this matter, and in the short life of the case in the trial court the question was evidently given no attention by the trial court or the adult parties.[4]

---

**4.** Because the question whether the child is a necessary party in the case is governed by un-

The issue is dispositive at this stage of the proceedings, and we must address it in the interests of justice. *See* Minn.R.Civ. App.P. 103.04 (scope of review).

The Minnesota Parentage Act includes this directive:

The child shall be made a party whenever:

\* \* \* \* \* \*

(2) the child is a minor and the action is to declare the nonexistence of the father and child relationship; or

(3) an action to declare the existence of the father and child relationship is brought by a man presumed to be the father under section 257.55, or a man who alleges to be the father, and the mother of the child denies the existence of the father and child relationship.

Minn.Stat. § 257.60 (1990).

The circumstances of this case are specifically addressed in section 257.60(3). Appellant appears as a man presumed to be the father under Minn.Stat. § 257.55, subd. 1(f). Respondent Pamela Cataldo has expressly denied the existence of his relationship as father of M.C. Under these circumstances, the trial court must make M.C. a party in the proceeding. When the child is made a party, the statutes further mandate appointment of a guardian ad litem to represent the child, specifically declaring that neither the child's mother nor father may provide that representation. The guardian's task is not complete without considering and reporting on the child's best interests. *Nicholson v. Maack*, 400 N.W.2d 160, 165 (Minn.App.1987).[5]

■ Section 257.60(2) leads to the same conclusion. Appellant's petition does not expressly ask the court to adjudicate the nonexistence of Michael Cataldo's father and child relationship with M.C., but it does ask that appellant be adjudicated as father. As observed before, this case involves the issue of competing presumptions of fatherhood. Once the conflict is decided, the statute provides the court's decree rebuts any contrary presumption. Minn.Stat. § 257.55, subd. 2. An adjudication of appellant's paternity thus determines that Michael Cataldo is not presumed to be the child's biological father.

It is evident that the child's role in the case invites an ad hoc determination of the weight attributed to the two competing parental presumptions existing here. We prescribe this approach with misgivings, appreciating policy considerations favoring a general preference for one presumption over the other regardless of the special circumstances of the case. This consideration, however, is one for deliberation by the

---

ambiguous provisions of statute, we have not solicited additional briefs on the issue. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n. 7 (Minn.1990) (court will decide without soliciting additional briefs where doctrine was not "either novel or questionable").

5. A number of other courts have mandated consideration of the child's interests in order to resolve disputes in circumstances like these. *Ban v. Quigley*, 168 Ariz. 196, 199, 812 P.2d 1014, 1017 (App.1990) (to avoid harmful adjudications, best interests considered before blood testing); *In re Marriage of Ross*, 245 Kan. 591, 602, 783 P.2d 331, 339 (1989) (best interests consideration employed before choosing to use blood test evidence); *McDaniels v. Carlson*, 108 Wash.2d 299, 309–13, 738 P.2d 254, 260–62 (1987) (trial court must consider best interest of child before putative father is allowed to bring action); *see* Mary K. Kisthardt, *Of Fatherhood, Families and Fantasy: The Legacy of Michael H. v. Gerald D.*, 65 Tul.L.Rev. 585, 592, 628–31 (1991) (discussing relationship of child's interests to decision on competing presumptions); *see also Michael H. v. Gerald D.*, 491 U.S. 110, 134, 109 S.Ct. 2333, 2348, 105 L.Ed.2d 91 (1989) (Stevens, J., concurring) (considering child's best interests in determining putative father's visitation rights); *R.R.K. v. S.G.P.*, 400 Mass. 12, 21, 507 N.E.2d 736, 741–42 (1987) (Liacos, J., concurring) (putative father's right to visit child depends on factual determination of child's best interests).

We note the prior holding of this court that under some circumstances parentage may be adjudicated without first determining whether the determination offends the child's best interests. *Spaeth v. Warren*, 478 N.W.2d 319 (Minn. App.1991), *pet. for rev. denied* (Minn. Jan. 30, 1992). *Spaeth* arose in circumstances where it was specifically determined that the child was not a necessary party under Minn.Stat. § 257.- 60. It does not purport to govern circumstances where the child is a necessary party. In addition, *Spaeth* does not address the conflicting presumptions arising where a man claims parenthood of a child born to the marriage of others.

legislature, and they have presently left no room for our general statement of a dominant presumption. First, the legislature has withheld a declaration of the weightier presumption, directing instead that the courts adjudicate the issue. Second, and more significantly, the legislature has directed the courts, when weighing considerations of policy and before governing conflicting presumptions, to examine the case "on the facts." Minn.Stat. § 257.55, subd. 2.

The parties submitted the case to the trial court solely on affidavits and put a scant record before the court. The child and her guardian are free to develop the record to demonstrate more fully the considerations governing the trial court's decision. The best interests of the child are one dimension of the facts.[6] Upon investigating the best interests consideration, the child and the guardian may be in a position at a minimum to alert the court on any openly observable child welfare dangers connected with an adjudication for or against appellant. *See McDaniels,* 108 Wash.2d at 312, 738 P.2d at 262 (appointment of guardian ad litem before court acts "ensures that due consideration will be paid to the rights of a child"). In addition, an improved record will demonstrate whether appellant has developed a substantial relationship with the child, a consideration that may enlarge or diminish the presumption in his favor. *See C.C. v. A.B.,* 406 Mass. 679, 689–90, 550 N.E.2d 365, 372 (1990) (declaration of putative father's rights conditioned upon circumstances where the claimant has developed a substantial relationship with the child). A better record will also shed light on the strength of Michael Cataldo's relationship with the child. *See* Kisthardt, *supra,* at 592 (observing cause to protect psychological parenthood relationships). Finally, with or without an expanded record, the child as well as the adult parties can address historic policy considerations on the importance of protecting marriage relationships and the importance of blood relationships.[7]

---

6. Appellant contends the present record adequately demonstrates that adjudication of his parentage would serve M.C.'s best interests in this case. He presented to the trial court an affidavit of a licensed consulting psychologist who stated a general proposition that children's interests are damaged by prohibiting relationships with their biological parents. This psychologist had no contact with the child or the parties, and his observations have little probative value on the specific circumstances of the case. Similar expert observations could be obtained to suggest that children's interests are generally hurt when they are denied the strongest possible benefit of the marriage relationship. Others would observe a national policy concern that the welfare of children has been imperiled by the declining respect for family units. Generalities on the child's interests may be among factors considered by the trial court in evaluating competing parenthood presumptions, but they are of little help in measuring the specific interests of M.C.

7. Concerns for marriage and blood relations are seen in the legislature's announcement of presumptive parental status. Each concern, however, also has an historic element.

Preference for the marriage relationship has ancient roots. *Presse,* 554 So.2d at 412; *see R.R.K.,* 400 Mass. at 16–17, 507 N.E.2d at 738–39 (Liacos, J., concurring) (tracing preference through Cardozo, Shakespeare, and into Roman law). Although the preference was premised in part on protecting children from disadvantages once suffered by illegitimate children, it has a second dimension of concern for the sanctity of marriage. *Haugen v. Swanson,* 219 Minn. 123, 127, 16 N.W.2d 900, 902 (1944); *see also C.C.,* 406 Mass. at 686–91, 550 N.E.2d at 370–73 (while repudiating concerns about declarations of illegitimacy, new principles reconciled with concern against intruding on marriages and families). A preference for the marriage relationship also coincides with constitutional proscriptions on state interference in the private realm of family life. *Griswold v. Connecticut,* 381 U.S. 479, 495, 85 S.Ct. 1678, 1687–88, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring).

Under Minnesota's parentage act, the presumption of parentage is expressly stated as one of "biological" fatherhood. Minn.Stat. § 257.55, subd. 1. We observe nonetheless that the act specifically states limited circumstances where the presumption for marriage relationships can be disputed. Most significantly, an action for the purpose of declaring the nonexistence of the relationship presumed for the spouse of the child's mother cannot be commenced once the child attains age three. Minn.Stat. § 257.57, subd. 1(b). Thus, the legislature clearly creates occasions where that presumption precludes recognition of blood relationships.

Blood relationships have also enjoyed preferences in the common law. Minnesota, like other states, has demanded placement of children according to their best interests, but has nonetheless declared a preference for the natural parents of the child. *See State ex rel. Larson v.*

We have also considered the question of whether standing issues under sections 257.55 and 257.77 might be determined prior to a decision on the need to join the child as a party. In the circumstances of this case, application of these statutes involves factual issues on social relationships and debatable legal judgments. Having regard for the statutory mandate of party status for the child, we can find no acceptable rationale for excluding the child from the process of addressing the difficult considerations on conflicting presumptions of fatherhood.

Due to remand of the case for further proceedings, we need not fully explore three issues addressed by the parties on appeal. First, appellant observes that the trial court erred when it refused to permit appellant to proceed on his report describing the conclusive results of prior genetic testing. Appellant further says the trial court erred by refusing to compel discovery which would have permitted him to produce the best record of the prior genetic testing. The trial court could not close its eyes to existing evidence. This is observable without any reference to documentation now furnished to this court. In any case, appellant has gained access to the genetic testing results, and this evidence will now come before the trial court on remand.

Second, appellant's attempt to compel discovery on a record of prior genetic testing was accompanied by his request for current testing as authorized by Minn.Stat. § 257.62. He contends the trial court erred in dismissing the case without ordering blood tests. Arguments of the parties on this issue demonstrate a question invited but not answered by the legislature when it amended the parentage act to establish presumptive parenthood on the basis of genetic testing. Is a man's standing to proceed to be determined before or after compulsory blood testing? *See supra* note 4 (appellate decisions calling for a demonstration of the child's best interests before proceeding to the step of compulsory blood tests). Be-

cause appellant has successfully located existing genetic test evidence, we need not determine here the difficult issue which arises when a proceeding such as this is initiated by a man who shows reason to believe testing will demonstrate his presumptive parenthood but who has no present evidence of genetic testing.

Finally, appellant challenges the constitutionality of trial court decisions that he had no standing to proceed in the case. He contends these decisions implicate the putative father's due process rights, and he poses equal protection problems suggested by the mother's control of parentage adjudications. Our review of these arguments is premature in light of the scant record before us, the absence of an appearance for the child, and the lack of a prior trial court decision shaping the application of statutory law to the case and addressing the constitutional arguments in the context of that application.

## DECISION

It was error in the circumstances here to make decisions on appellant's standing without joining the child as a party to the proceedings. The case is remanded to the trial court for reevaluation of competing statutory presumptions, taking into account contentions made on behalf of the child. The child should be free to offer additional evidence.

Reversed and remanded.

SHORT, Judge (dissenting).

I respectfully dissent and would affirm the trial court's decision. Kelly seeks a declaration that he is the father of a thirteen-month-old child. However, he has standing to bring this action only if he is a presumed father under the Uniform Parentage Act. *See* Minn.Stat. § 257.57 (1991). While Kelly alleges he is a presumed father under Minn.Stat. § 257.55, subd. 1(f), he failed to offer any evidence of

---

*Halverson,* 127 Minn. 387, 388–89, 149 N.W. 664, 665 (1914) (natural parent's rights of custody and control a "paramount" consideration); *In re Welfare of D.L.,* 486 N.W.2d 375 (Minn.1992)

(employing preference for blood relatives); *see also Spaeth,* 478 N.W.2d at 322 (overriding purpose of parentage proceedings to determine biological parenthood).

the statistical probability of paternity based on blood testing. Under these circumstances, he does not meet the statutory requirements of a presumed father and has no standing to challenge the child's paternity. *See Pierce v. Pierce,* 374 N.W.2d 450, 452 (Minn.App.1985), *pet. for rev. denied* (Minn. Nov. 4, 1985). Comments from a guardian ad litem would be immaterial to the determination of Kelly's standing to maintain this action.

Kelly's attempt to buttress his case with test results produced for the first time in an appendix to his brief is of no consequence. In addition to serious questions of admissibility, the document cannot be considered because it was not presented to the trial court. *See Stearns v. Hertz Corp.,* 326 F.2d 405, 408 (8th Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964) (an appeal is to be determined upon the record below); *Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988) (an appellate court may only consider matters produced and received as evidence below).

We can only consider evidence properly admitted at trial or newly discovered evidence. *See Keller v. Wolf,* 239 Minn. 397, 404, 58 N.W.2d 891, 897 (1953); Minn. R.Civ.P. 60.02. Kelly admits he knew of the test results before commencing this paternity action. Without a showing of unavailability in time for a Minn.R.Civ.P. 59.03 motion, the test results cannot qualify as newly discovered. *See Snider v. State Dept. of Transp.,* 445 N.W.2d 578, 580 (Minn.App.1989). Under the undisputed facts, Kelly cannot meet the requirements for relief under Minn.R.Civ.P. 60.-02(a). While we might be tempted to decide the role of the marriage presumption in the face of scientific proof under Minn. Stat. § 257.55, subd. 2 (1990), without a proper record that issue is not before us. *See Grinolds v. Independent Sch. Dist. No. 597,* 346 N.W.2d 123, 128 (Minn.1984) (appellate review is limited to the record).