In re the **PATERNITY OF B.J.H.,** Child.

**A.J.S., Respondent,**

v.

**M.T.H., et al., Appellants.**

No. C6–97–920.

Court of Appeals of Minnesota.

Jan. 13, 1998.

Paula Smoot Ogg, Golden Valley, for appellants.

Christopher Brevik, Brooklyn Center, for respondent.

Lorraine S. Clugg, Edina, for guardian ad litem.

Considered and decided by HUSPENI, P.J., and KLAPHAKE and HARTEN, JJ.

## OPINION

KLAPHAKE, Judge.

Almost two years after appellants, husband and wife, were married, wife gave birth. Respondent sued to establish his paternity of the child, citing Minn.Stat. § 257.55(f) (1996), which states that a person whose paternity index equals or exceeds 99 percent is presumptively a child's father. Appellants sought to have the husband adjudicated the child's father under an analysis of the best interest factors listed in Minn.Stat. § 518.17, subd. 1(a) (1996) and Minn.Stat. § 257.55, subd. 1(a) (1996), which state that a woman's husband is presumptively the father of her child. Husband and wife appeal the district court's adjudication that respondent is the child's father. We affirm because (1) the district court properly resolved the conflict

between the paternity presumptions based on considerations in addition to the best interest factors listed in Minn.Stat. § 518.17, subd. 1(a); (2) the district court's resolution of conflicting paternity presumptions is supported by the facts, policy, and logic; and (3) the district court did not abuse its discretion in addressing discovery or evidentiary issues.

## FACTS

Almost a year after appellants were married, wife began a romantic relationship with respondent. Over a year after that, and while still married to husband, wife gave birth to a child. Two months after the child was born, husband learned that blood tests showed a paternity index exceeding 99 percent for respondent. Respondent informed his family that the child was his, and he and his family had contact with wife and the child. Husband, however, accepted and cared for the child as if it were his own.

For reasons that are disputed, the relationship between wife and respondent deteriorated. Wife terminated contact with respondent, refusing to allow him to see her or the child. Shortly thereafter, respondent sued to establish his paternity, citing the blood test results and Minn.Stat. § 257.55, subd. 1(f), which states that a man whose paternity index equals or exceeds 99 percent is presumptively a child's father. Appellants sought to have husband adjudicated the child's father based on an analysis of the "best interests" factors listed in Minn.Stat. § 518.17, subd. 1(a), and based on Minn.Stat. § 257.55, subd. 1(a), which state that the husband of a woman who conceives or gives birth to a child is presumptively the child's father. The district court appointed a guardian ad litem for the child.

The proceedings were acrimonious and involved disputes about, among other things, appellants' access to respondent's financial information and medical history. The guardian ad litem recommended that respondent be adjudicated the child's father.

The district court, based on the best interests factors listed in Minn.Stat. § 518.17, subd. 1(a), and other considerations, adjudicated respondent the child's father, awarded wife sole legal and physical custody, ordered the parties to cooperate regarding visitation, and directed respondent to produce financial information for support purposes. The district court denied appellants' posttrial motions and granted respondent's motion for enforcement of a six-month visitation schedule recommended by the guardian ad litem. Later, the district court amended its prior order to state that the paternity portion of the proceeding had been bifurcated and included a ruling under Minn. R. Civ. P. 54.02 allowing appeal of the paternity ruling. The court denied appellants' request to stay visitation pending appeal.

## ISSUES

I. In adjudicating paternity, did the district court err by preferring respondent to husband because he is the child's biological father?

II. In adjudicating paternity, did the district court err by considering factors in addition to those listed in Minn.Stat. § 518.17, subd. 1(a), in addressing the conflicting paternity presumptions?

III. On these facts, is adjudicating respondent the child's father supported by policy and logic?

IV. Did the district court abuse its discretion in determining the evidentiary and discovery issues?

## ANALYSIS

Under Minnesota's version of the Uniform Parentage Act, both husband and respondent are presumed to be the child's father. *See* Minn.Stat. § 257.55, subd. 1(a) (stating child born or conceived during marriage is presumptively child of mother's husband); *Id.*, subd. 1(f) (stating man with paternity index equaling or exceeding 99 percent is presumptively child's father).

### I.

█ Claiming the proper standard for resolving conflicting paternity presumptions is the child's "best interests," appellants argue the district court erred by preferring respondent to husband based on biology, rather than emphasizing the stability-for-the-child

concept underlying the best interest criteria of Minn.Stat. § 518.17. *See In re Welfare of C.M.G.,* 516 N.W.2d 555, 560 (Minn.App. 1994) ("[w]here competing presumptions of paternity exist, the determination of paternity is no longer solely an issue of biological fact"); *see also* Minn.Stat. § 518.17, subd. 1(a) (listing factors to be considered in addressing child's best interests); *McCabe v. McCabe,* 430 N.W.2d 870, 872 (Minn.App. 1988) (recognizing that importance of child's emotional and psychological stability underlies factors listed in Minn.Stat. § 518.17, subd. 1(a)). Because the district court denied preferring respondent to husband based on biology alone, appellants' claim is not viable unless we assume the district court erred by misrepresenting the basis for its decision. We cannot assume district court error. *Loth v. Loth,* 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949). Further, the district court's findings reflect that in rendering its paternity decision, it considered many factors in addition to biology, including the child's best interests.

## II.

Appellants, citing *C.M.G.,* allege that under the best interests factors listed in Minn. Stat. § 518.17, subd. 1, and the stability-for-the-child concept underlying those factors, husband should have been adjudicated the child's father. But *C.M.G.* does not mention Minn.Stat. § 518.17. Nor does the parentage statute direct use of the best interests factors of Minn.Stat. § 518.17 to resolve conflicting paternity presumptions. If paternity presumptions conflict, the presumption controls which, "on the facts is founded on the weightier considerations of policy and logic." Minn. Stat. § 257.55, subd. 2 (1996). Consistent with this broad-based method of resolving conflicting paternity presumptions, case law indicates a child's best interests are *part* of the analysis for resolving conflicting paternity presumptions. *See C.M.G.,* 516 N.W.2d at 560 (stating "a child's best interests *is a valid policy factor* in resolving a conflict between competing paternity presumptions") (emphasis added); *Kelly v. Cataldo,* 488 N.W.2d 822, 827 (Minn.App.1992) (noting Minn.Stat. § 257.55 directs conflicting paternity presumptions to be resolved "on the

facts" and stating "[t]he best interests of the child *are one dimension* of the facts") (emphasis added), *review denied* (Minn. Sept. 15, 1992).

■ That the best interests factors listed in Minn.Stat. § 518.17, subd. 1, were not intended to be dispositive in resolving conflicting paternity presumptions is consistent with the language of Minn.Stat. § 518.17. The section's title refers to "custody" of children. *See* Minn.Stat. § 645.49 (1996) (stating that headnotes, while not part of a statute, are "catch words used to indicate the contents of the section"). Also, the statute itself states that "[i]n determining *custody,* the court shall consider the best interests of each child and shall not prefer one *parent* over the other[.]" Minn.Stat. § 518.17, subd. 3(a)(3) (1996) (emphasis added). Further, the statute defines a child's best interests as "all relevant factors" including, and hence not limited to, those listed therein. Minn. Stat. § 518.17, subd. 1(a). Thus, not only does Minn.Stat. § 518.17 assume the determination for which its list of best interests factors will be used is a custody determination where parentage is known (or at least not contested), but the open-ended definition of "best interests" shows that the legislature recognized the factors listed in the statute would not always be sufficient to make a custody adjudication. To make these statutory factors dispositive in resolving conflicting paternity presumptions, as appellants implicitly request, would be inconsistent with both case law indicating a best interests analysis is a valid *part* of the analysis for resolving conflicting paternity presumptions and the purpose for which the legislature enacted the statutory factors. Under these circumstances, we conclude a district court is not required to apply only the statutory factors in addressing conflicting paternity presumptions. Here, the district court's references to considerations beyond the factors listed in Minn.Stat. § 518.17, subd. 1, show it properly weighed all the evidence in determining paternity in this case. *See Kelly,* 488 N.W.2d at 826 (referring to "ad hoc determination of the weight attributed to the two competing parental presumptions").

Indeed, were we to adopt appellants' emphasis on stability,[1] we would, in circumstances like those here, be favoring over all other paternity presumptions the presumption that a woman's husband is her child's father. *See* Minn.Stat. § 257.541 (1996) (mother of child born to woman not married to child's father "has sole custody of the child until paternity [or custody] has been established"). We cannot favor one paternity presumption over another. *See Kelly,* 488 N.W.2d at 826–27 (stating whether to favor one presumption over another is "for deliberation by the legislature, and they have presently left no room for our general statement of a dominant presumption").

### III.

Generally, paternity presumptions may be rebutted by "clear and convincing evidence." Minn.Stat. § 257.55, subd. 2. This standard has been applied in cases involving conflicting paternity presumptions. *See L.C. v. T.L.,* 870 P.2d 374, 379 (Wyo.1994) (stating, in case of conflicting paternity presumptions, that Wyoming's equivalent of Minn.Stat. § 257.55, subd. 2, "means that when an appropriate action has been brought, a presumption can be rebutted by clear and convincing evidence"); *see also* Minn.Stat. § 645.22 (1996) (uniform laws "shall" be construed to effect their purpose and in a manner consistent with states that enact them).

Appellants challenge the adjudication of respondent as the child's father on grounds, including the district court's reliance on the guardian ad litem's testimony and report, which discount the primary parent and intimacy-with-the-child factors of the best interests analysis. *See* Minn.Stat. § 518.17, subd. 1(a)(3) and (4) (requiring consideration of child's primary parent and intimacy of parents' relationship with child). The district court and the guardian ad litem implicitly recognized that because wife terminated respondent's contact with the child, these factors would favor husband simply because husband had more access to the child than respondent did. To rule that it was an error to discount these factors would allow custodians to gain an unfair advantage in paternity litigation by terminating a putative father's contact with the child in question. Policy considerations weigh against encouraging such practices. *See Kelly,* 488 N.W.2d at 827 and n. 7 (discussing "historic policy considerations" that emphasize the "importance of blood relationships").

Appellants also complain that the district court's adjudication of respondent as the child's father is based on speculation. But that adjudication is consistent with the findings that (1) respondent is the biological father of the child; (2) respondent wants a relationship with the child; (3) respondent is willing and financially able to support the child; (4) respondent introduced the child to his extended family, who accept the child; (5) respondent's expert and the guardian ad litem support adjudicating respondent as the father; (6) the guardian ad litem testified that no trial evidence altered her recommendation; (7) respondent no longer seeks a relationship with wife; (8) the court had doubts about the continued stability of husband and wife's marriage; (9) the court found the child will eventually want to know the identity of his biological father; and (10) even though the child has spent the majority of his life with husband, because of the child's young age, he can still develop a relationship with respondent. Because these findings are not clearly erroneous on this record, the district court's adjudication of respondent as the child's father is logically based on the evidence presented. *See* Minn. R. Civ. P. 52.01 (findings of fact not set aside unless clearly erroneous).

Because adjudicating respondent the child's father is consistent with the policy of not unnecessarily impairing blood relationships and is logically based on the facts, any presumption favoring husband is rebutted and we affirm the adjudication of respondent

1. Appellants cite *C.M.G.* and *Kelly* to argue the court is to give "serious" consideration to the child's existing relationships and the putative father's intent to continue that relationship. Both cases, however, show that the child's existing relationships are one of several considerations to be examined in resolving conflicting paternity presumptions. *C.M.G.,* 516 N.W.2d at 561; *Kelly,* 488 N.W.2d at 827.

as the child's father. *See C.M.G.*, 516 N.W.2d at 561 (affirming paternity adjudication where adjudicated father was not biological father, but was willing and able to support child and wanted to be child's father, child bonded with adjudicated father and his family, other presumptive father did not want relationship with child, and mother's motives in seeking paternity adjudication were doubtful).

## IV.

■ Whether to admit evidence or grant a discovery request is discretionary with the district court. *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn.1990) (admission of evidence); *Kahn v. Tronnier*, 547 N.W.2d 425, 431 (Minn.App.1996) (granting discovery request), *review denied* (Minn. July 10, 1996).

■ Appellants claim the district court should have granted their request for access to respondent's financial information. Generally, "[a]ll relevant evidence is admissible." Minn. R. Evid. 402. If paternity presumptions conflict, a person's willingness and ability to support a child can be relevant. *C.M.G.*, 516 N.W.2d at 561. Relevant evidence, however, "may be excluded * * * by considerations of undue delay [or] waste of time[.]" Minn. R. Evid. 403. Here, in refusing appellants access to respondent's financial information, the district court stated (1) the denial did not prevent the court from inquiring into the child's best interests; (2) granting the request "would have caused undue delay and cost"; (3) appellants' request was not reasonably calculated to lead to the discovery of evidence admissible in the paternity stage of the trial; and (4) the court did order appellant to produce financial information for the support stage of the proceedings. Thus, even if appellants' discovery request had been granted, the evidence could have been excluded from the paternity stage of the proceedings for reasons other than relevance. *Cf. Schmitz v. Stransky*, 454 N.W.2d 455, 459 (Minn.App.1990) (affirming exclusion of evidence because it did not go directly to paternity), *review denied* (Minn. Jun. 25, 1990). The district court did not abuse its discretion in denying appellants' request for financial discovery for the paternity phase of the proceeding.

■ Appellants claim the district court erred by addressing the contacts between wife and respondent. The district court stated the contacts did not impact the relationships of wife or respondent with the child, but that it had to address the contacts "for credibility purposes." In its posttrial order, the district court reemphasized that the findings were needed for credibility purposes and that "[n]one" of the findings in question "influence[d] the Court's best interest of the child determination." Appellate courts defer to district court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988). Here, witness credibility was an important aspect of the case. Further, because the district court stated the contacts did not impact its view of the parent-child relationships or the best interests determination, any error in addressing the contacts between wife and respondent was harmless. *See* Minn. R. Civ. P. 61 (harmless error to be ignored).

Appellants claim the district court erred by finding the testimony of respondent's expert credible. The district court, however, stated it did not find respondent's expert credible or give the expert's testimony much weight. Whatever the credibility accorded respondent's expert, we defer to the district court. *See State ex rel. Trimble v. Hedman*, 291 Minn. 442, 456, 192 N.W.2d 432, 440 (1971) (appellate courts defer to fact-finder's determination of weight and credibility of expert witnesses).

■ Appellants claim the district court erred by not requiring respondent to produce a medical history. Absent a demonstrated need for such information, appellants' request was premature. *See Peterson v. Peterson*, 402 N.W.2d 847, 848 (Minn.App.1987) (where former husband sought to compel blood tests to address paternity and claimed results could be valuable for medical emergencies or decisions based on medical history, this court stated "such a claim does not support a present request for relief").

■ Appellants also claim the district court set visitation improperly. The visita-

tion schedule was a temporary schedule expiring in September 1997. Thus, even if it were appealable, any challenge to it is moot. *See In re Inspection of Minnesota Auto Specialties, Inc.,* 346 N.W.2d 657, 658 (Minn. 1984) (during appeal, if an event occurs making a decision on the merits unnecessary or an award of relief impossible, appeal "will be dismissed as moot"); *Weinzierl v. Lien,* 296 Minn. 539, 209 N.W.2d 424 (1973) (generally, only final rulings are appealable).

## DECISION

The district court correctly used factors in addition to the best interests factors listed in Minn.Stat. § 518.17, subd. 1(a), to address the conflicting paternity presumptions. On this record, and in light of the relevant considerations of policy and logic, we affirm the district court's adjudication of respondent as the child's father. The district court did not abuse its discretion in ruling on the parties' evidentiary and discovery disputes. Finally, because the visitation schedule was temporary and expired before this appeal was heard, we do not address challenges to it.

**Affirmed.**